## Wytheville.

FAYETTE LAND CO. v. LOUISVILLE & NASHVILLE R. CO.

JUNE 25, 1896.

Absent, Harrison, J.

1. CHANCERY PRACTICE—*Process—Affidavit—Parties Unknown.*—The affidavit of a corporation must, of necessity be made by an agent; and the affidavit of the local attorney of a corporation that the names of certain persons to be made defendants to a bill by such corporation, are to the affiant unknown, is a sufficient compliance with section 3230 of the Code, to authorize a proceeding, by publication, against such persons as " parties unknown."

2. CHANCERY PRACTICE—*Process—Parties Unknown—Plea in Abatement, giving Names and Residences.*—Where parties have been properly proceeded against as " parties unknown," they may appear in person or by attorney and file their answers, or may appear within three years after entry of a judgment, decree, or order against them; and a plea in abatement by a defendant who has been served with process, setting forth the names and residences of all parties interested in the suit, is immaterial, and should be rejected.

3. CHANCERY PRACTICE—*Bill to Enforce Vendor's Lien—Personal Decree for the Debt —Execution—Decree for Sale of Land.*– Upon a bill filed by a vendor to enforce a lien reserved for the purchase price of land, the complainant is entitled to a personal decree for the amount of his debt, and also to a decree for the sale of the land if the personal decree be not satisfied. But, in ordinary cases, the better practice is not to allow any execution on the decree until the land has been sold and the proceeds applied to the debt, and then to issue execution for the balance of the debt remaining unsatisfied.

4. COMMISSIONERS IN CHANCERY—*Attorney in Case—Vacation Decree.*—It is error to appoint an attorney in a case a commissioner to execute a decree for account therein, because the commissioner acts in a judicial capacity. But, if done, the error may be corrected in vacation.

5. CHANCERY PRACTICE—*Demurrer to Cross-bill—Personal Decree for the Purchase Money of Land—Reference to a Commissioner.*—Although a

demurrer may have been overruled to a cross-bill asking a rescission of a contract of sale of land set up in the original bill, the court may, if the pleadings and proof justify it, render a personal decree in favor of the complainant in the original bill for the amount of purchase money due him, and, at the same time, refer the cause to a commissioner to ascertain the liens on the land and their respective priorities.

6. CORPORATIONS—*Lands in Excess of Charter Privilege—Effect of Deed to or from Corporation—Forfeiture.*—The statute of mortmain has never been adopted in this State, and there is no proceeding authorized by the common law of this State, or any statute thereof, under which lands acquired by a corporation in violation of its charter can be forfeited to the State. While a limit is fixed upon the quantity of land which a corporation may take and hold, the statute imposes no penalty for its violation, and is only directory. The only penalty incurred is that which waits upon every violation by a corporation of its chartered rights and privileges. No one can question the right of a corporation to take and hold real estate except the State by which it was created, or that within whose limits it does business, and even these must do so by a direct proceeding for that purpose. A conveyance of real estate to a corporation in excess of the amount allowed by law conveys the title of such real estate to the corporation, and a conveyance from it is effectual to pass its title thereto to the grantee.

Appeal from a decree of the Circuit Court of Wise county pronounced April 18, 1893, in a suit in chancery, wherein the appellee was the complainant, and the appellant and others were the defendants.

*Affirmed.*

The Louisville & Nashville Railroad Company filed its bill against the Fayette Land Company and four others who had purchased of it parcels of the land mentioned in the bill, and against other purchasers by the name and description of "parties unknown," seeking to enforce the collection of $120,000, balance of purchase money for a tract of land conveyed to the Fayette Land Company by the complainant, and for which a lien was retained in the deed of conveyance. The Fayette Land Company demurred generally, and answered the bill, and prayed that its answer might be treated as a cross-bill. The Fayette Land Company, in its

answer, denied that the complainant could take, hold, or convey the land mentioned in the bill, and averred that it had been drawn into expensive litigation with parties who had purchased lots, and who denied the power of the complainant to convey title to respondent, which suits were still pending; that proceedings had been taken to escheat the land to the Commonwealth; and that in consequence these clouds cast on the title it could not sell the land, and hence ought not to be required to pay for it; but, on the contrary, was entitled to recover back the cash payment made on the land and all sums expended in endeavoring to make sale of it. The answer, which was prayed to be treated as a cross-bill, concludes as follows :

"Wherefore, the premises being considered, respondent prays that this answer be treated as a cross-bill against the plaintiff herein, and that it be required to answer the same; that upon a final hearing hereof your Honor will decree that the sale in the plaintiff's bill mentioned be rescinded and set aside; that the notes here sued on be cancelled and delivered up to respondent, and that the plaintiff herein be compelled to pay back to respondent the $60,000 cash payment made on account of this transaction, with interest thereon from the day of payment, and the costs of this suit, and that a reference to a commissioner, or an issue out of chancery be made to ascertain the damgaes which respondent has been subjected to, over and above the payment of the aforesaid money and interest, and for such other, further, and general relief as to equity may seem meet, and the nature of its case may require, and respondent will ever pray, &c."

The defendant, Fayette Land Company, also filed a plea setting forth the names and residences of all the purchasers of any portion of the land mentioned in the bill, and the numbers and description of the lots, and prayed that the complainant be compelled to have them brought before the

court by proper service of process before being allowed to proceed further with the suit.

The four purchasers of land of the Fayette Land Company, who were made parties by name and served with process, also filed their "joint and separate demurrer and answer" to complainant's bill, and prayed that their answer might be treated as a cross-bill. The defence made was substantially the same as that made by the Fayette Land Company.

The complainant demurred to and answered the cross-bill of the Fayette Land Company. The answer was as follows:

"For answer, respondent denies that the deed from J. M. Flanary, *et ux*, to it, mentioned in said cross-bill is either void or voidable; it denies that it violated the law in purchasing, holding or conveying the land in controversy; it denies that respondent's deed to the Fayette Land Company did not pass a good title to the land.

"And further answering, respondent states and charges that at the time of the purchase of said land, and during the time of its holding the title thereto, the said land was proper for repondent's legitimate purposes.

"Wherefore, having answered, &c., respondent prays to be dismissed with its costs."

Upon the hearing, the court entered the decree appealed from, which is as follows:

"This cause came on this day to be heard on complainant's bill and exhibits filed therewith, the deposition of C. T. Duncan, H. A. W. Skeen, and exhibits filed therewith, on the bill taken for confessed as to John Marston, Jr., and all parties who are or may be interested in the subject to be disposed of, who have not answered, pleaded or demurred, who have not been made parties defendant to said bill, by name, as said Marston, and all of said parties unknown have been duly proceeded against by publication in the

mode prescribed by law for non-residents and parties unknown, and have failed and still fail to appear, plead, answer or demur thereto, on the demurrer of defendant Fayette Land Company and the joinder therein by complainant, on the plea of defendant Fayette Land Company, setting up the names and places of residence of all the purchasers of lots or parts of the land known to said defendant, other than those made parties by name, which plea was first offered on this day, also the answer and cross-bill of said defendants, and exhibts filed therewith, and demurrer of complainant thereto, on the joint and separate answer and cross-bill of defendants, E. H. Ould, W. C. Robinson, R. F. Dillard, Henry Carter and E. G. Booth, and exhibits filed therewith, on the answer of complainants to said cross-bill, and the demurrer and answer of Fayette Land Company to said cross-bill, and was argued by counsel. Whereupon, the court being fully advised, it is adjudged, ordered and decreed that the demurrer of the Fayette Land Company to complainant's bill be overruled, and the demurrer of complainant to the Fayette Land Company's cross-bill be overruled and that complainant Louisville & Nashville Railroad Company recover of the Fayette Land Company one hundred and twenty thousand dollars, with interest from March 8th, 1890, until paid, and if the said sum be not paid on or before August 15th, 1893, then W. C. McDowell, Jr., who is appointed a special commissioner for the purpose, is directed, after having advertised in four issues of some weekly newspaper in this or in Scott county, of the time and object of his setting, to take an account of all the liens on any part of the property in the bill and exhibits described as having been conveyed to the Fayette Land Company, the amounts and priorities thereof, and it is further adjudged that the complainant has a lien on the aforesaid land. All questions as to the rights of the defendants who

have filed their cross-bill herein, and all other questions not herein decreed upon are herein reserved.

"It is furthered ordered that as the Fayette Land Company desires to appeal from this decree, all action hereunder is suspended for ninety days upon the defendant executing bond with security conditioned as the law directs in the penalty of one hundred dollars, $100."

*J. H. Fulton, E. M. Fulton, R. C. Minor* and *R. T. Irvine,* for the appellant.

*J. F. Bullitt, Jr.,* and *H. C. McDowell, Jr.,* for the appellee.

KEITH, P., delivered the opinion of the court.

On the 24th of February, 1888, James M. Flanary and wife conveyed to H. M. Smith, agent, a tract of land in Wise county, Va., in the town of Big Stone Gap, containing 330 acres, for the sum of $35,000, of which $12,000 was paid in cash, and the residue to be paid in instalments on or before February 24, 1889. 'In this transaction Smith was acting as the agent for the Louisville & Nashville Railroad Company, and the money received by him was the money of that company. By deed dated March 8, 1890, the Louisville & Nashville Railroad Company conveyed to the Fayette Land Company this tract of land, with a reservation of a right of way and depot site, for the consideration of $180,000—$60,000 to be paid in cash, $60,000, with six *per cent.* interest, to be paid on the 8th day of March, 1891, and $60,000, with like interest, to be paid on the 8th day of March, 1892. For the deferred payments the Fayette Land Company executed its promissory notes, and the vendor retained a lien on the lands conveyed. The deed contained covenants of general warranty that the property conveyed was free from encumbrance; that the grantor had a right to convey; that it had

done no act to encumber the same, for quiet possession, and for further assurances.

The deed recites that it is the same land conveyed by Flanary and wife to H. M. Smith, agent, described in the deed of May 10, 1888, and H. M. Smith united in the deed for the purpose of conveying to the Fayette Land Company any interest that he had in said land. This deed was duly acknowledged and was recorded in Wise county June 2, 1890. Flanary and wife have been paid in full, but the Fayette Land Company has never paid anything beyond the cash payment of $60,000. On the 2d day in December a subpœna in chancery was issued by the clerk of the Circuit Court of Wise county summoning the Fayette Land Company, Dillard, Robinson, Ould, and Marston to appear and answer a bill to be exhibited against them by the Louisville & Nashville Railroad Company.

At the time of the institution of the suit an affidavit was made before a notary public by H. C. McDowell, one of the attorneys of the Louisville & Nashville Railroad Company, reciting that "there are numerous persons, as affiant believes, who have bought from the Fayette Land Company portions of the 330 acres of land in Big Stone Gap, Va., who are, except as stated in the original bill of complaint in the above-styled cause, to affiant unknown, and also that there are and may be other persons interested in and having liens on parts of said land who are unknown to affiant." The parties named in the subpœna, and others under the description of parties to the defendant unknown, are made defendants to the bill.

The bill sets out the facts as they have been hereinbefore stated with respect to the purchase of the land by the Louisville & Nashville Railroad Company and its subsequent sale to the Fayette Land Company; avers that the deferred payments evidenced by the promissory notes of the Fayette Land Company, though due and often demanded, have never

been paid; that the defendant has never paid any State, county, or town taxes or levies on the land, or any part thereof, and that the land is now encumbered by the liens of the Commonwealth, of the county of Wise, and of the town of Big Stone Gap, for delinquent taxes and levies. It charges that a short time after the date of its conveyance to the Fayette Land Company the property was laid off into streets, alleys, blocks and lots, and that a considerable number of the lots were sold to various parties.

The prayer of the bill is that the defendant company may be required to pay the sum of $120,000, with interest thereon, in accordance with its contract.

The defendant company appeared and filed several motions, a plea, demurrer, and answer to the bill; and thereupon such proceedings were had that the Circuit Court of Wise county entered a decree on the 18th day of April, 1893, in favor of the plaintiff for $120,000, with interest, and referred the cause to a commissioner to take an account of the liens binding upon the land in the bill and proceedings mentioned. From this decree an appeal was allowed by one of the judges of this court.

The first assignment of error is to the refusal of the court to remand the cause to rules at the April term, 1893, because the case was not properly matured, the affidavits as to unknown parties not being sufficient.

The specific objection taken to the affidavit is that it fails to state that said parties are unknown, but merely declares that they are unknown to affiant. This objection is not well taken. An affidavit is only expected to declare what is known to the party making it, or where an absence of knowledge is required to be shown by the affidavit, as in this case, that there is absence of knowledge upon the part of the affiant. It would be impossible for any one to say that parties were unknown to all the world. It is sufficient if they are unknown to the affiant, and the affiant is one

who is by law authorized to make the required affidavit. The language of the statute, section 3230 of the Code, is, " where the bill states that there are or may be persons interested in the subject to be divided or disposed of, whose names are unknown, and makes such persons defendants by the general description of parties unknown, on affidavit of the fact that the said parties are unknown, an order of publication may be entered against such unknown parties." The proceedings here were, therefore, in exact accordance with the letter of the statute. The affidavit of a corporation must of necessity be made by an agent. The statute does not say by whom the affidavit is to be made, but declares that an affidavit being made, certain proceedings shall be had. An affidavit by the local attorney of a corporation would seem to be more persuasive as to the facts stated, that there are parties interested who are unknown, than a like affidavit made by some officer of the plaintiff corporation residing, it may be, and as in this case was a fact, at a place remote from the locality in which the transactions occurred which are set out in the bill, and from the land liens upon which were to be investigated and adjudicated. Upon this point, see the opinion of Judge Lewis in the case of *Benn* v. *Hatcher et als.*, 81 Va., at page 35. The affidavit was sufficient and the motion to remand was, therefore, properly overruled.

The second error assigned is that the court rejected defendant's plea setting forth in full the names and residences of all parties interested in the subject-matter.

The persons named in this plea had already been made parties under the designation of " parties unknown." They had a right as such to appear in person, or by counsel, and file their answers; or, if they failed to do so, then they could, under section 3233, appear within three years from the entry of the judgment, decree, or order provided for in section 3232. The plea was immaterial, and was, therefore, properly rejected.

The third assignment of error is to the action of the court in rendering a personal decree against the petitioner.

The position of the appellant is that the utmost it was proper for a court of equity to do was to sell the land, and give a decree for the balance remaining due, if any, after crediting the appellant with the proceeds of sale. This question is disposed of in the case of *Ayers* v. *Robins*, 30 Gratt., at page 115. In that case a bill was filed to enforce a vendor's lien for the balance of the unpaid purchase money. The defendant demurred upon the ground that equity had no jurisdiction, the plaintiff having a complete remedy at law for the recovery of the money due. The court, however, said, Judge Burks delivering the opinion:

"An action at law by the vendor against the purchaser on an executory contract for sale to recover the purchase money due him does fall short of what he is entitled to. It does not reach the whole mischief and secure the whole right of the vendor in a perfect manner. He may have his judgment in a court of law, and by execution pursue the personal property of the purchaser. He can go no further. He is entitled under his contract to more perfect relief. He has not only the right to a personal judgment against the purchaser and to subject his personal estate, which he may do in a court of law, but he has the right to subject the land for which the purchase money is owing. He has a lien upon it, which a court of law does not recognize and cannot enforce, and which is recognized and can be enforced only in a court of equity. In the latter forum he is entitled to a personal decree, and at the same time and in the same suit to a further decree for the sale of the land, if the personal decree be not satisfied."

This plainly asserts the jurisdiction of a court of equity to enter a personal decree under the circumstances disclosed in this record, and to enter a further decree for the sale of the land if the personal decree be not satisfied. It seems that no execution has been issued, and in ordinary cases we

think the better practice is that an execution should not be permitted to issue until the property pledged for the debt has been sold and the proceeds of sale applied, when an execution might properly be issued for the portion of the debt remaining unsatisfied. In the meantime the plaintiff would have the security of the judgment and the right to issue the execution, should circumstances arise to justify it.

It was error to appoint an attorney for the plaintiff a commissioner to execute the decree for an account, for the commissioner acts in a judicial capacity; but this error was corrected by the decree of June 22, 1893, and the commissioner first appointed was removed, and one free from objection named in his stead. Of the power of the judge to make such a decree in vacation there is no doubt. See section 3426 of the Code.

The sixth assignment of error is that the court erred in giving judgment or decree against the petitioner in the then existing state of pleadings.

The appellants had filed a cross-bill, to which the appellee had demurred. This demurrer the court had overruled, and the appellant contends had thereby decided that it was entitled to a rescission of the contract of sale set up in the bill, but this is not the necessary or proper interpretation of the action of the court upon the demurrer. Upon the pleadings and proof, the court was of opinion that the plaintiff was entitled to a personal decree against the defendant company for the money due from it. It was at the same time of opinion that the pleadings and proofs rendered an order of reference necessary to the proper disposition of the cause. It therefore did both. It gave a decree to the plaintiff for the money, and it gave an order of reference to ascertain the liens upon the property in the bill described, their amounts, and priorities. In this there was no error.

Another error assigned is that the court decreed a sale of the land without having first ascertained the liens binding upon it.

This assignment of error is sufficiently answered by the decree itself. It does not direct a sale of the land, and it does order a report of the liens with a view to its sale at some future period.

These preliminary matters having been disposed of, we come now to the seventh assignment of error, which is that the court erred in giving a decree against the appellants on the merits.

The Louisville & Nashville Railroad Company is a Kentucky corporation, authorized by an Act of Assembly of this State, approved March 30, 1887 (Acts Extra Session 1887, ch. 22, p. 19), to construct and operate a line of railroad in Virginia. By that act it is made subject to all the limitations and restrictions imposed by the laws of Virginia upon railroad companies, and it is contended by appellant that section 1073 of the Code of 1887, which is as follows,—

" The land acquired by any company incorporated for a work of internal improvement along its line generally, shall not exceed one hundred feet in width, except in deep cuts and fillings, and then only so much more shall be acquired as may be reasonably necessary therefor; the land which it may acquire for buildings, or for an abutment along its line generally, shall not exceed three acres in any one parcel; and the land which it may acquire for buildings, or other purposes of the company at the principal *termini* of its work, or any place or places within five miles of such *termini*, shall not exceed fifteen acres in any one parcel; but in the case of a railroad company, land not exceeding forty acres in any one parcel may be acquired for its main depots, machine shops, and other necessary purposes connected with the business of said company."—

renders the appellee incapable of acquiring or taking title to the real estate set out and described in its bill, and that therefore no title passed from it to the appellant, but that it is or was absolutely void, or conveyed, at most, a defeasible title, the land being subject even in the hands of an alienee from the railroad company to be escheated to the Commonwealth. It may be conceded that if this were a bill for spe-

cific performance of a contract that the relief would be denied. See *Case* v. *Kelly*, 133 U. S. 21. But such is not the case. The agreement of the parties has been fully executed.

Section 1068 declares that

"Every corporation, in respect to which it is not otherwise provided, shall have perpetual succession and a common seal * * * * * * may contract and be contracted with, purchase, hold, and grant estates, real and personal, and make ordinances, by-laws, and regulations * * * for the management of its estates, and the due and orderly conducting of its affairs."

This section is but declaratory of the common law.

Section 1070 declares:

"No incorporated company shall hold any more real estate than is proper for the purposes for which it is incorporated," &c.

This again is but a recognition of the common law principle.

Section 1072 provides the mode in which a company incorporated for internal improvement may enter upon land for the purpose of examining and surveying it.

Section 1073 has already been quoted in full.

That the conveyance of this land to the Louisville & Nashville Railroad Company was not void is abundantly established by authority.

In the case of *The Banks* v. *Poitiaux*, 3 Rand. 136, it appears that the banks were by their charters authorized to hold such real estate "as was requisite for their immediate accommodation in relation to the convenient transacting of their business." Upon the lands purchased by the banks in that case they proceeded to erect buildings for the transaction of their business, and on either side of the buildings so erected there remained a vacant space, which they sold to the appellee. He, failing to pay, as agreed, the bank filed a bill for specific performance, and the chancellor decreed that

the banks had exceeded their powers in purchasing and sell-
ing the property in question, it not being necessary in rela-
tion to the transaction of their business. Upon appeal, it
was held that while the power to acquire may be limited,
restrained, or prohibited, either by the charter creating the
corporation or by a general law, such was not the effect of
the charters in question, because the acts creating the char-
ters are with respect to the quantity of real estate which they
were capable of holding only directory.

"They impose no penalty in terms. They do not declare
the purchase by, or conveyance to, the banks to be void, nor
vest the title in the Commonwealth, or any other than the
banks in consequence of such purchase and conveyance.
The legal title passed to the banks by the conveyance to
them, and their conveyance would effectually transfer that
title to any other. If, in making the purchase of the land
in question, the banks violated their charters, the corpora-
tion might, for that cause, be dissolved by a proceeding at
the suit of the Commonwealth; and even in that case, it
seems to be the better opinion, the property, if not previ-
ously conveyed to some other, would revert, upon the disso-
lution of the corporation, to the grantor, and not to the Com-
monwealth. But, any conveyance made by the corporation,
before its dissolution, would be effectual to pass its title.
The banks have, therefore, a title which they can convey
to the appellee, and which would, in his hands, be indefeasi-
ble. It would seem extremely inconvenient, if every con-
tractor with one of these banks could, for the purpose of
avoiding his contract, institute the enquiry whether the
bank had violated its charter."

In *Silver Lake Bank* v. *North*, 4 Johnson's Ch. 370, the
same principle is recognized.

In *Bank* v. *Matthews*, 98 U. S. 621, it is said: "Where a
corporation is incompetent by its charter to take title to real
estate, a conveyance to it is not void."

In *Mallett* v. *Simpson*, 94 N. C. 37, it was held that although a corporation is forbidden by its charter to hold real estate, yet a deed of land to it is valid, " and even when the right to *acquire* real property is limited by the charter, and the corporation transcends its power in that respect, a conveyance to it is not void, but only the sovereign can object. It is valid until assailed in a direct proceeding instituted by the sovereign for that purpose."

In *Nat. Bank* v. *Whitney*, 103 U. S. 99, the bank had taken security upon real estate for a loan which it was prohibited to do by the National Banking Law. Mr. Justice Field, delivering the opinion, said that " the statute did not declare such security void, but was silent on the subject; that had Congress so intended it would have been easy to say so, and it can hardly be presumed that this would not have been done instead of leaving the question to be settled by the uncertain result of litigation and judicial decision." And, after citing numerous cases where a disregard of statutory prohibitions has not been held to vitiate the contracts of parties, but only to authorize actions by the government against them, the court held that the prohibitory clauses of the banking law did not vitiate real estate securities taken for loans, and that a disregard of them only laid the association open to proceedings by the Government. * * * " That has always been the punishment prescribed for the wanton violation of a charter, and it may be made to follow whenever the proper public authority shall see fit to enforce its application."

In *Fritts et als* v. *Palmer*, 132 U. S. 282, it is said by Mr. Justice Harlan, " that where a corporation is incompetent by its charter *to take a title to real estate*, a conveyance to it is not void, but only voidable, and the sovereign alone can object. It is valid until assailed in a direct proceeding instituted for that purpose."

The text-writers are to the same effect. In 1 Beach on Corp., sec. 378, it is said :

"No party except the State can object that a corporation is holding real estate in excess of its rights. Accordingly, under an act which forbids a foreign corporation to ' acquire and hold' real estate, a deed of conveyance of land to such corporation is not void. It passes the title, and the corporation may hold the land subject to the Commonwealth's right of escheat. The Commonwealth alone can object to the legal capacity of a corporation to hold real estate. There must be a direct proceeding by the State for the purpose of vacating the deed."

In Thompson on Corporations, sec. 5795, it is said:

"Although a corporation may be disabled or forbidden from holding land at all, or from holding land for particular purposes, or from holding land beyond a prescribed limit, yet if it does hold land in the face of such disabilities or prohibitions, its title will be good except as against the State alone, and that it will be deemed to have a good title until its title is invalidated in a direct proceeding instituted by the State for that purpose."

And, in sec. 5797, it is said:

"Although the State might, in a direct proceeding for that purpose, have overthrown the title of the corporation and escheated the property to its own use, yet, not having done so, the corporation may in the meantime convey an indefeasible title to another, of whatever estate in the lands had been conveyed to or acquired by it."

The doctrine that the State alone can interfere seems to rest upon the principle suggested in *The Banks* v. *Poitiaux, supra,* that it would be extremely inconvenient if every contractor with corporations might, for the purpose of avoiding their contracts, be permitted to institute enquiry as to violations of the charter. It is a question which concerns public interests, and the State alone is competent to protect and defend them. *Runyan* v. *The Lessee of Coster,* 14 Peters 122; *Wroten's Assignee* v. *Armat et als.,* 31 Gratt. 251.

Enough has been said to show that the conveyance to the Louisville & Nashville Railroad Company was not void, but that it served to vest the title in the appellant.

Is the deed voidable? As we have seen, in discussing the first branch of this assignment of error, no one can be heard to question the right of a corporation to acquire and hold real estate, except the State by which the corporation was created, or that State within whose limits and by whose permission or authority, express or implied, it does business, and it must do so by a direct proceeding instituted for that purpose.

There is much plausibility in the suggestion of the appellee that section 1073 was designed to prohibit the acquisition of real estate by means of the exercise of the right of eminent domain, or by condemnation, as it is called, except to the extent and within the limits and in the mode appointed by that section.

By section 1068 corporations are authorized to purchase and hold real estate without any limitation whatsoever; by section 1070 they are prohibited from holding more real estate than is proper for the purposes for which they are incorporated. In order to give full effect to these sections, as well as to section 1073, there is much room to contend that the first regulates the acquisition of real estate by contract, and that the last applies to proceedings by corporations for the condemnation of real estate.

But, granting that section 1073 applies to the acquisition by corporations of real estate without respect to the mode of acquisition, none of the sections referred to declare that the title shall be void. As was said in *The Banks* v. *Poitiaux*, the statute law is only directory in this respect. It imposes no penalty in terms. It does not declare the purchase by or the conveyance to the banks to be void, nor vest the title in the Commonwealth in consequence of such purchase and conveyance. The only penalty incurred is that which waits

upon every violation of its charter by an incorporated insti-
tution.   The impending danger of a judgment of ouster and
dissolution is, we think, the only check contemplated by the
law.   That has always been the punishment prescribed for
the wanton violation of a charter, and it may be made to
follow whenever the proper public authority may see fit to
enforce its application. See *National Bank* v. *Whitney, supra.*

The statute of *mortmain* has never been adopted into the
jurisprudence of this State.   Lomax's Dig., 2 ed., p. 815;
*Rivanna Navigation Co.* v. *Dawson,* 3 Gratt. 21; *Conrad* v. *Mar-
shall,* 5 Call, 364.   It is safe to say, therefore, that there is
no proceeding authorized by the common law of Virginia
under which lands acquired by a corporation in violation of
its charter can be forfeited to the State.

Is there any statutory authority by which it can be done?
Chapter 105 of the Code is upon the subject of "Escheats
and Property Derelict."   It provides for the appointment of
an escheator in every county; and section 2374 directs each
commissioner of the revenue annually to furnish the es-
cheator of his county or corporation with " a list of all lands
within his district of which any person shall have died
seized of an estate of inheritance intestate, and without any
known heir, or to which no person is known by him to be
entitled."

We have seen that by the deed from Flanary and wife the title
passed to and vested in Smith as the agent of the Louisville &
Nashville Railroad Company, and by a subsequent deed it was
conveyed to the Louisville & Nashville Railroad Company
directly.   The land in controversy, therefore, does not come
within the terms of the section just quoted, for the commis-
sioner of the revenue could not in the face of the convey-
ances of record rightfully say that there is no person known
by him to be entitled to it.

It appears further that this property has been conveyed
by deed from the appellee to the appellant, and that no pro-

ceedings have been taken by the State to revoke the privileges given the appellee by the act of Assembly before referred to. Acts of Special Session 1887, ch. 22, p. 19. The deed of the Louisville & Nashville Railroad Company was, therefore, effectual to pass its title to the land in controversy and vest it in the Fayette Land Company. See *The Banks* v. *Poitiaux*, 3 Rand. at page 142; and 5 Thomp. Com. on the Law of Corp., sec. 5797, and cases there cited.

We are of opinion, therefore, that the seventh asssignment of error is not well taken, and, upon the whole case, the decree complained of must be affirmed.

*Affirmed.*