Hon. T. L. NORVAL, } Judges.
Hon. J. J. SULLIVAN, }

Hon. ROBERT RYAN, }
Hon. JOHN M. RAGAN, } Commissioners.
Hon. FRANK IRVINE, }

---

## JOHN COMSTOCK v. JOHN KERWIN.

FILED DECEMBER 8, 1898. No. 8476.

1. **Ejectment: PLAINTIFF'S TITLE.** A plaintiff in ejectment cannot rely on a defect in the title of his adversary, but must recover, if at all, on the strength of his own title or right to the property.

2. **Clerk of Court: AUTHENTICATION OF TRANSCRIPTS.** Ordinarily, the clerk of one court has not the authority to authenticate transcripts of the records kept by another court.

3. **Evidence: TRANSCRIPT OF RECORD: AUTHENTICATION.** A transcript of the record of a foreign court is not admissible in evidence, unless authenticated according to the provisions of section 414 of the Code of Civil Procedure.

4. ———: **RECORD OF ENTRY ON GOVERNMENT LAND: TRANSCRIPT.** One cannot invoke section 62, chapter 73, Compiled Statutes, unless he has complied with the provisions thereof.

5                                     (1)

5. ———: INDORSEMENTS ON DOCUMENTS. The introduction in evidence of an instrument or document will not carry with it the indorsements thereon, unless the offer is sufficiently broad to include them.

ERROR from the district court of Dixon county. Tried below before NORRIS, J. *Affirmed.*

*Barnes & Tyler*, for plaintiff in error.

*J. J. McCarthy* and *W. F. Norris, contra.*

NORVAL, J.

This action was brought by John Comstock against John Kerwin to recover possession of 120 acres of land in Dixon county. A judgment for the defendant, on a trial to the court, was entered, and plaintiff brings error.

On July 1, 1873, two patents were issued by the United States,—one conveying eighty acres of the land in controversy, and the other the remaining forty acres. The patents are alike, except as to the description of the lands, the number of the certificate of the register of the United States land office, and the number of the surveyor general's certificate. A copy of one of such patents follows:

"SURVEYOR GENERAL'S CERTIFICATE No. 293G.

"The United States of America, to all to whom these presents shall come, greeting:

"Whereas, by the 3d section of the act of congress approved June 2, 1858, entitled 'An act to provide for the location of certain confirmed private land claims in the state of Missouri, and for other purposes,' it is enacted 'that in all cases of confirmation by this act, or where any private land claim has been confirmed by congress, and the same, in whole or in part, has not been located or satisfied, either for want of a specific location prior to such confirmation, or for any reason whatsoever, other than a discovery of fraud in such claim subsequent to such confirmation, it shall be the duty of the surveyor general of the district in which such claim was situ-

ated, upon satisfactory proof that such claim has been so confirmed, and that the same, in whole or in part, remains unsatisfied, to issue to the claimant, or his legal representative, a certificate of location for a quantity of land equal to that so confirmed and unsatisfied, which certificate may be located upon any of the public lands of the United States subject to sale at private entry at a price not exceeding one dollar and twenty-five cents per acre: *Provided,* That such location shall conform to legal divisions and subdivisions.' And in the 4th section of the said act it is declared 'That the register of the proper land office, upon the location of such certificate, shall issue to the person entitled thereto a certificate of entry, upon which, if it shall appear to the satisfaction of the commissioner of the general land office that such certificate has been fairly obtained, according to the true intent and meaning of this act, a patent shall issue as in other cases.' [11 U. S. Statutes at Large, p. 294, ch. 81.]

"And whereas, on the thirty-first day of August, A. D. 1872, the surveyor general of the United States for the state of Louisiana, in conformity with the provisions of the act aforesaid, issued his certificates of location, numbered 293A to 293H, inclusive, each for eighty acres, in full satisfaction of the unlocated and unsatisfied claim of L. Chance, entered as number sixty in list of actual settlers of the report made on the twenty-fourth day of July, A. D. 1821, by Cosby and Skipwith. Confirmed by act of congress approved August 6, A. D. 1846.

"And whereas it appears, by certificate number 407 of the register of the United States Land office at Dakota City, in the state of Nebraska, which said certificate has been deposited in the general land office of the United States, that by virtue of the surveyor general's certificate, as aforesaid, number 293G, for eighty acres, there has been located the following described tract of land in part satisfaction of the aforesaid claim of L. Chance, to-wit: The east half of the southeast quarter of section

thirty-two, in township twenty-eight, of range six east, in the district of lands subject to sale at Dakota City, Nebraska, containing eighty acres, according to the official plat of the survey of the said land, returned to the general land office:

"Now know ye, that the United States of America, in consideration of the premises, and in conformity with the aforesaid act of congress of June 2, 1858, have given and granted, and by these presents do give and grant, unto the said L. Chance or his legal representatives the tract of land above described; to have and to hold the same, together with all the rights, privileges, immunities, and appurtenances, of whatsoever nature thereunto belonging, unto the said L. Chance, or his legal representatives, and to his or their heirs and assigns forever.

"In testimony whereof, I, Ulysses S. Grant, president of the United States of America, have caused these letters to be made patent, and the seal of the general land office to be hereunto affixed.

"Given under my hand at the city of Washington, the first day of July, in the year of our Lord one thousand eight hundred and seventy-three, and of the independence of the United States the ninety-seventh.

"[L. S.]  By the President: U. S. GRANT.

By S. D. WILLIAMSON, *Secretary.*

"Vol. 3, page 407.  E. A. FISKE,
  *"Recorder of the General Land Office, ad interim."*

Plaintiff claims the lands through various transfers, the following being his chain of title, in addition to the patents aforesaid: Sale on March 21, 1872, in the parish court of East Feliciana, Louisiana, of the settlement land claim of L. Chance to David C. Hardee; David C. Hardee and wife to Isabella Ann Fluker, warranty deed, dated November 3, 1874; quitclaim deed from the heirs at law of Isabella Ann Fluker to John Comstock, the plaintiff herein, bearing date May 22, 1886. The defendant asserts title through *mesne* conveyance, the first in point of time of execution being a tax deed.

Comstock v. Kerwin.

It is a familiar principle that a plaintiff in ejectment must recover on the strength of his own title or right to the property, and cannot rely upon defects in the title of his adversary. (*Gregory v. Kenyon*, 34 Neb. 640; *Bigler v. Baker*, 40 Neb. 325; *Omaha Real Estate & Trust Co. v. Kragscow*, 47 Neb. 592; *Wildman v. Shambaugh*, 43 Neb. 371.) The right of John Comstock to the real estate in controversy is no stronger than the weakest link in his chain of title; hence if any one of the transfers indicated is not sufficient to convey any title or right to the lands, this action must fail. It will be observed that the patents were issued by the United States in the name of "L. Chance or his legal representatives."

It is insisted by counsel that L. Chance was dead at the time the patents were issued, and that D. C. Hardee, one of the grantors in plaintiff's chain of title, was the legal representative of said Chance, and therefore the title to these lands at once vested in him upon the execution and delivery of the patents, and the same was conveyed through the subsequent *mesne* conveyances to John Comstock. Numerous decisions* are cited to sustain the proposition that when a patent is issued in the name of a particular person "or his legal representatives," the words quoted include and embrace assignees and grantees of the person so designated in the patent, as well as his administrator and heirs and next of kin. Conceding the rule stated to be sound, then the important question presented is whether it has been shown by competent evidence that D. C. Hardee was the legal representative of L. Chance. It is strenuously insisted by plaintiff that L. Chance was a resident of Louisiana, parish of East Feliciana, and at the time of his death owned a settlement land claim against the United States, which had never been located by him; that his estate was

---

*Simmons v. Saul*, 138 U. S. 439; *Warnecke v. Lembca*, 71 Ill. 91; *Hammons v. Mason & Hamlin Organ Co.*, 92 U. S. 724; *Phelps v. Smith*, 15 Ill. 573; *New York Mutual Life Ins. Co. v. Armstrong*, 117 U. S. 597; *New York Life Ins. Co. v. Flack*, 3 Md. 341; *Wear v. Bryant*, 5 Mo. 164; *Hogan v. Page*, 2 Wall. [U. S.] 607; *Carpenter v. Rannels*, 19 Wall. [U. S.] 138.

administered in the probate court of the said parish of East Feliciana, and in pursuance of an order of said court said claim or right to locate upon a certain number of acres of the public lands of the United States was sold to D. C. Hardee.  It does with sufficient certainty appear that the surveyor general of the United States for the state of Louisiana, in conformity with the act of congress, and in satisfaction of the said settlement land claim of L. Chance, issued certificates of location Nos. 293F and 293G, each for eighty acres; and that said certificates were subsequently located on the lands in controversy at the United States land office at Dakota City, Nebraska, and in pursuance of such locations the patents were issued.  For the purpose of establishing the purchase of said settlement land claim by Hardee there was introduced in evidence that which purports to be a copy of the record of the proceedings in the probate court of the parish of East Feliciana, in the state of Louisiana, relating to the administration on the estate of L. Chance, deceased, and the succession sale of his settlement claim against the United States for 640 acres of land.  The receipt, as evidence of said pretended transcript, was at the time objected to by the defendant, on the ground, among others, that the same was not sufficiently authenticated to entitle it to be admitted in evidence.  The objection was, however, overruled, and since the cause was tried without the aid of a jury, we must assume that the court, in rendering its decision, discarded and rejected all improper and incompetent testimony which had been adduced on the hearing, and on a review of the case we must weigh alone the material and competent evidence.

The pretended transcript of the record already mentioned contained the certificate following:

"State of Louisiana,   }
Parish of East Feliciana. }

"I certify the above and the foregoing six pages to be

a true and complete transcript of all the original papers in this case now on file in my office.

"Witness my official signature and seal of office at Clinton, parish and state aforesaid, this 30th day of July, A. D. 1894.

"[SEAL.]         ·         THOMAS L. EAST,
*"Clerk 13th District Court."*

There was no other or further authentication of the document whatsoever. It is very evident that the foregoing certificate was insufficient proof of the record of, and proceedings had in, the probate court of the parish of East Feliciana, in the state of Louisiana, for two reasons: First. No clerk or other officer of said court has certified to the genuineness of the copy or transcript placed in evidence. The sole certificate is over the official signature and seal of the office of the clerk of the thirteenth district court, an independent tribunal from that in which the purported record was made, and proceedings were had. Ordinarily, the clerk of one court has no authority to authenticate transcripts of the record of another and different court. If it be true that the probate court of the parish of East Feliciana has ceased to exist, and the thirteenth district court has succeeded to its jurisdiction, and in pursuance of law the records of the former have been deposited in the office of the clerk of the last mentioned court, it devolves upon the plaintiff to establish the same, for they are matters of which this court cannot take judicial cognizance.

Again, the transcript in question is not competent proof of the records of a foreign court, because it was not authenticated in the manner provided by the act of the congress of the United States, and by section 414 of the Code of Civil Procedure of this state. The two statutes are substantially the same. Our section 414 provides that the judicial record of "a sister state may be proved by the attestation of the clerk, and the seal of the court annexed, if there be a seal, together with a certificate of a judge, chief justice, or presiding magistrate, that the

attestation is in due form." This transcript is not attested by either the judge or clerk of the probate court of the parish of East Feliciana, and, therefore, was inadmissible as evidence for any purpose. (*Names v. Names*, 48 Neb. 701.)

It is urged that the proceedings of said probate court were properly received in evidence under section 62, chapter 73, Compiled Statutes, entitled "Real Estate." That section is in the language following:

"Section 62. Whenever any person referred to in the third section of the act of congress entitled 'An act to provide for the location of certain confirmed land claims in the state of Missouri, and for other purposes,' approved June 21, 1828 (11 Statutes at Large, 294 and 295), has had a private land claim which has not been located and satisfied, has died before making the entry therein authorized of public land, and his right so to do has been sold by order of the probate court of the county and state of his residence, and the entry of public lands in this state has been made by the purchaser or his grantee, and letters patent of the United States have issued to the original claimant or his legal representative, it shall be competent for the owner of the land under the patentee to cause to be recorded in the book of deeds in the office of the county clerk of the county in which the land is situate a copy of the proceedings of the said probate court upon which the right of the original claimant was sold as aforesaid, together with the proceedings of the several officers on said sale, which copy shall be duly certified by the clerk of said court or of any court which has succeeded to the jurisdiction of said probate court, and in which the records of said probate court are by law deposited, and the record so made in the county clerk's office shall be taken and held by all the courts of this state as evidence of the transfer of the right to make such entry in the land office, and of the title of the purchaser at said probate sale, and his grantees under the said sale to the lands patented as

Comstock v. Kerwin.

aforesaid, and a copy of the said record in the county clerk's office, certified by that officer, may be read in evidence with the like force and effect as the original papers."

Assuming, for the purposes of this case, the validity of said section, plaintiff cannot invoke its provisions, for the reason it has not been shown that the proceedings of the said probate court were ever recorded in the office of the county clerk of the county in which these lands are situate. The section quoted above declares "a copy of said record in the county clerk's office, certified by that officer, may be read in evidence with like force and effect as the original papers." The document in question was not tendered as an exemplified copy of any record in Dixon county, as the following excerpt from the bill of exceptions will disclose: "The plaintiff now offers in evidence an exemplified copy of the records of the probate court of the parish of East Feliciana, in the state of Louisiana, by which is conveyed, by succession sale, the rights of L. Chance, the patentee in the Exhibits 'A' and 'B,' to one David C. Hardee, which said exemplified copy is hereto attached, marked for identification 'Exhibit C,' and made a part hereof." In this connection it should be stated that there appears on the back of said transcript, or "Exhibit C," the following indorsement:

"STATE OF NEBRASKA, ⎱ ss.
    DIXON COUNTY,    ⎰

"Filed for record October 27, 1894, at 8 A. M., and recorded book R of Deeds, pages 174, 75, 76, 77, 78, & 80 & 81.                    T. J. SHEIBLEY,
                                    "County Clerk."

This indorsement was not introduced in evidence, as the offer copied above was not sufficiently broad to cover the same. (Noll v. Kenneally, 37 Neb. 882; Schroeder v. Nielson, 39 Neb. 335; Cummins v. Vandeventer, 52 Neb. 478; Johnson v. English, 53 Neb. 530; Levy v. Cunningham, 56 Neb. 348.) It follows that plaintiff has not estab-

lished any title or rights to the lands in himself, and the judgment must accordingly be

AFFIRMED.