## Staunton.

### WIMER AND WIFE V. WIMER AND ALS.

#### OCTOBER 8th, 1886.

JURISDICTION—*Partition of land in another State.*—Courts in Virginia have no jurisdiction to partition lands situated in another State, because such right can only be exercised under the *lex loci rei sitæ. Poindexter* v. *Burwell, ante p.* 507.

Appeal from decree of circuit court of Highland county, rendered 28th of April, 1885, in the cause of Emanuel Wimer and others against Jacob Wimer and Margaret his wife. The purpose of this suit was to have partition of the lands whereof George Wimer, of Philip, died seized in fee, among the several parties then owning it as tenants in common. These lands consisted of several adjoining tracts, to wit: Three hundred and twelve acres, nine acres and one hundred and five acres, situated on Dry Run, partly in said county and partly in Pendleton county, in West Virginia. Defendants demurred to the bill and answered it, admitting the death of George Wimer, his ownership of the land, the heirs at law and the ownership at the institution of the suit, but denying the jurisdiction of the said circuit court to make partition of land situated in West Virginia, &c. The court appointed commissioners to make the partition, if practicable, as prayed for, and accordingly they did make and report such partition as well of the lands lying in West Virginia as of those lying in Virginia. Defendants made exceptions to the report, which were overruled and

the report confirmed. From the decree the said Jacob Wimer and wife obtained an appeal and *supersedeas* from one of the judges of this court.

*Sheffey & Bumgardner,* for appellants.

*William J. Robertson,* for appellees.

The only question of any difficulty upon which the court will have to pass in this case is whether the circuit court of Highland county had jurisdiction to decree the partition of the tract of 432 acres of land, lying partly in that county and partly in West Virginia.

A court of Virginia cannot issue process to run into another State, and has no jurisdiction to act *directly* upon real estate situate therein; but it is equally well settled that wherever a court of chancery has acquired jurisdiction of the parties, in a matter of proper equitable cognizance, it may, by acting *in personam,* compel the conveyance of real property, or interests therein, notwithstanding such property may be situated without the State.

In *Muller* v. *Dows,* 94 U. S. 444, in which objection was made to a decree for the sale of a railroad lying in two States by a court sitting in one of them only, Mr. Justice Strong, delivering the opinion of the court, says on page 449: "Without reference to the English chancery decisions, where the objection to the decree would be quite untenable, we think the power of courts of chancery in this country is sufficient to authorize such a decree as was here made. It is here undoubtedly a recognized doctrine that a court of equity sitting in a State, and having jurisdiction of the person, may decree a conveyance by him of land in another State, and may enforce the decree by process against the defendant. True, it cannot send

its process into that other State, nor can it deliver possession of land within its jurisdiction; but it can command and enforce a transfer of the title."

This has been the unquestioned law of Virginia since the decision of Chancellor Wythe in 1794, in the case of *Farley* v. *Shippen*, Wythe's Reports, page 136 of the first; page 254 of the second, or Minor's edition.

In *Humphrey* v. *McClanahan*, 1 Mun. 493, Judge Roane says, page 501 : "The case of *Farley* v. *Shippen*, Wythe's Rep., p. 135, is conclusive as to the power of the court over lands lying in another State where the persons decreed against are within its jurisdiction." See also *Dickinson* v. *Hoomes*, 8 Gratt. 333, 411; *Barger* v. *Buckland*, 28 Gratt. 850, 863, 864.

Jurisdiction so to act is not confined, as might possibly be inferred from the language used in *Massie* v. *Watts*, 6 Cranch, 148, to cases of contract, fraud, or trust.

Story, in his Equitable Jurisprudence, says, in sec. 1292 : "These are not, however, peculiar or privileged cases for the exercise of jurisdiction; for courts of equity will, in all other cases, where the parties are within the territorial sovereignty, or within the reach of the territorial process, administer full relief, although the property in controversy is actually situate in a foreign country, unless, indeed, the relief which is asked is of a nature which the court is incapable of administering."

And in *Dickinson* v. *Hoomes*, 8 Gratt., Judge Moncure says, 410, 411: "It is undoubtedly true that real estate, or immovable property, is exclusively subject to the laws of the government within whose territory it is situate, and that no writ of sequestration or execution, or any order, judgment or decree of a foreign court can be enforced against it. But I think it is no less true that equity, as it acts primarily *in personam*, and not merely *in rem*, may, where a person against whom relief is sought is within its jurisdiction, make a decree upon

Argument.

the ground of a contract, or any equity subsisting between the parties respecting property situated out of the jurisdiction."

This being well established law, the only remaining inquiry is whether the *partition* of lands lying in a foreign jurisdiction is one of those matters relief as to which a court of equity is, in the language of Story, in the passage already quoted, "*incapable of administering.*"

It is not to be denied that Story seems to have so considered it—saying in the same paragraph: "But a bill for a partition of lands, situate in Ireland, will not be entertained in a court of chancery in England; because (as has been said) it is in the realty; and a court cannot award a commission into Ireland; and a bill for partition is in the nature of a writ of partition at the common law, which lieth not in England for lands in Ireland."

And Professor Minor, in his Institutes, vol. iv, page 1201, says: "But it is not competent to the court to decree touching a foreign subject, when the act to be done can be accomplished and perfected only by an authority *operating territorially.* Thus a conveyance may be decreed of lands abroad, if the defendant is within the jurisdiction; but not a *partition of lands,* as between joint tenants, tenants in common, or co-heirs."

Yet, notwithstanding the respect justly due to these distinguished authors, and notwithstanding the fact that in several decided cases it seems to have been assumed as a matter about which there was no controversy, that a court has no power to decree a partition of lands lying in another State, I have great confidence that, upon careful consideration, this court will become satisfied that the proposition, thus broadly laid down, is incorrect—or, at the least, that it is inapplicable to the case now before them.

The authority for it is to be found in the case of *Cartwright* v. *Pettus,* 2 Ch. Cas. 214, cited under the name of *Carteret* v.

*Petty,* in a note to *Kennedy* v. *The Earl of Cassilis,* 2 Swanston's Reports, marginal page 324, top page 342.

In this note there is given an extract from Lord Nottingham's manuscripts, setting forth his reasons for so holding.

After stating that he had ordered the defendant to render an account of the waste charged to have been committed by him upon the lands in Ireland, because he could by attachment or sequestration enforce obedience to that order, he goes on to give his reasons for sustaining the demurrer to the bill so far as it sought partition of the same lands, saying: "But where no obedience of the person imprisoned, or any act of his, can sufficiently execute such a decree, there it is in vain to hold such a plea; and that is this case. For, to a partition in chancery it is necessary to award a commission to some neighboring justices to divide the lands; if they refuse, there lies an attachment against them for such refusal; if they execute the commission and return it, then there ought to be a decree that the lands be accordingly conveyed, and that till a conveyance they may be so enjoyed; the consequence thereof is a sequestration, and an injunction for the possession, and a writ of assistance to the sheriff; *none of all which can be awarded into Ireland, nor supplied by the obedience of the person imprisoned here.*"

It is thus obvious that his sole reason for holding that he had not jurisdiction to make partition of the land in Ireland was that, according to the established practice of the court of chancery in making partition of lands, its power would have to be exercised *in Ireland upon persons there residing,* and not subject to the jurisdiction of the court, which would be unable to compel the justices, by attachment, to make partition under the commission awarded to them, and would also be unable to sequester the land, or to put the party in possession by writ of assistance to the sheriff.

For a similar reason Lord Hardwicke, in *Roberdeau* v. *Rous,*

1 Atkyns' Rep. 543, refused to entertain a bill to put a party *in possession* of land in St. Christophers.

It is manifest that if Lord Nottingham had seen his way to compel partition of the land in Ireland, or Lord Hardwicke his, to put the party in possession of the land in the island of St. Christophers, by the personal coercion of the defendant, without an attempt to exercise the power of the court in a country outside of its jurisdiction, neither of them would have refused to entertain the application for relief.

Under the law of Virginia, partition is not made in the same manner as in England. The proceedings are much less formal. 4 Minor's Inst. p. 1214.

In the case now before the court all that it was necessary for the commissioners of partition to do, was to go upon a single tract of land, containing four hundred and thirty-two acres, and designate the portions to be assigned to each of the parties. This tract of land, it is true, lay partly in Virginia and partly in West Virginia; but that constituted no impediment to them in the discharge of their duty, or to the surveyor who ran the dividing lines under their direction. The line between the States was not taken into consideration, and had no influence upon their action—indeed, they did not know precisely where it ran—as is proved by Bussard, the surveyor of Highland county, who ran the lines, and was one of the commissioners.

The appellants were subject to the jurisdiction of the court, having been brought before it by process of subpœna, duly served on them in the county of Highland.

They owned an interest, not only in the tract of land partition whereof was decreed—a portion of which lay in Virginia—but also in the other tract ordered by the court to be sold, the whole of which lay in Virginia. So that the court could have no difficulty in compelling them to obey such

decree as it might render; not only by attachment of their persons, but by sequestration of their property also.

If it be objected that the court cannot give complete relief by putting them in possession under a writ of assistance, the answer is that the jurisdiction of the court will not be arrested because of its inability to afford relief which is absolutely complete.

As was said by Lord Hardwicke, in *Penn* v. *Lord Baltimore,* 1 Vesey, Senior, 454—as to the court's not enforcing the execution of their judgment—"If they could not at all, I agree it would be vain to make a decree, and that the court cannot enforce their own decree *in rem* in the present case. But that is not an objection against making a decree in the cause; for the strict primary decree in this court, as a court of equity, is *in personam* long before it was settled whether this court could issue to put into possession in a suit of lands in England, which was first begun and settled in the time of James I, but ever since done by injunction or writ of assistance to the sheriff, but the court cannot to this day, as to lands in Ireland or the plantations. In Lord King's time, in the case of *Richardson* v. *Hamilton, Attorney-General of Pennsylvania,* which was a suit of land and a house in the town of Philadelphia, the court made a decree, though it could not be enforced *in rem.* In the case of Lord Anglesey, of land lying in Ireland, "I decreed for distinguishing and setting the parts of the estate, though impossible to enforce that decree *in rem;* but, the party being in England, I could enforce it by process of contempt *in personam,* and sequestration, which is the proper jurisdiction of this court. And, indeed, in the present case, if the parties want more to be done, they must resort to another jurisdiction; and it looks, by the order in 1735, as if that was in view; liberty being given thereby to resort to that board."

To a similar objection, made in the much older case of

*Arglasse* v. *Muschamp*, reported in 1 Vernon, p. 75, and again in the same volume, p. 135, counsel answered (p. 76): "As to what was objected that this court had not power in this case to compel an execution of its decree, which, if admitted, were the unhappiness of the suitors only, and could be no grievance to the defendant; yet they would in this case content themselves with the defendant's person, in case no sequestration was to be had."

And the court, passing for the second time upon the objection, said (p. 135): "As to the objection that this court was deficient in power in this case to compel a performance of its decree because it could not sequester the lands in question, he looked upon that as an objection of no weight; and it did not appear to him, but the defendant might have other lands in England; and then those would be subject to sequestration; and therefore overruled the plea."

In *Farley* v. *Shippen*, Wythe's reports, already referred to, Chancellor Wythe, on page 265–266 of Minor's edition, says: "The defendant's counsel objected, also, that this court cannot, in execution of its decree, award a writ of sequestration against the lands in North Carolina because its precepts are not authoritative there. But this, which is admitted to be true, doth not prove that the court cannot make the decree, because, although it cannot award such a writ of sequestration, it hath power, confessedly, to award an attachment for contempt in refusing to perform the decree. The remedy may fail, indeed, by removal of defendants out of the court's jurisdiction. Yet such a removal, after the party had been cited, is not an exception which can be interposed to prevent a decree. A court of common law may enter up a judgment against him who, by the removal of his goods and chattels with himself, after having pleaded to the declaration, or after having been arrested, rendereth vain a *capias ad satisfaciendum* or a *fieri facias*."

If, in the case now under consideration, the appellants refuse
to acquiesce in the decree of partition, by quietly surrendering
to the other parties such portions of the land assigned to them,
respectively, as may be in their possession, the court can, by
attachment or sequestration, compel them to convey the legal
title.    This is all that the court could do in reference to lands
in another State, as to which its jurisdiction to grant relief is
unquestioned.    Why cannot similar relief be granted in this
case?    It will be equally effectual as in a case of fraud, or
trust, or contract; and will require no greater stretch of juris-
diction on the part of the court.

None of the objections which have caused courts to hold,
and text-writers to express, the opinion, that courts of chancery
have no jurisdiction to decree partition of lands in a foreign
country appear in this case.    If those objections be conceded
to be well founded when they do exist, they should not be
applied to cases like this, in which they do not exist.    *Cessante
ratione legit cessat ipsa lex.*

If the jurisdiction of a court to make partition among heirs
of a tract of land descended to them is to be arrested as to so
much of the land as may be found to lie within the limits of
an adjoining State, and confined to that portion of it within
the limits of the State in which the court sits, heirs will, in
many cases, be entirely without remedy so far as relates to
the partition of lands which lie partly in one and partly in
another State; for it will often happen that, while partition of
the tract as a whole can be properly and advantageously made,
the portion lying in one State cannot be properly partitioned
separately and apart from that lying in the other—as it would
have to be if neither State could make partition of lands lying
beyond its limits; the effect of which would be to put it in the
power of any one of the heirs (who might be able to buy the
whole, his co-heirs being so situated that they could not com-

pete with him), by insisting on a sale, to get their shares for less than their value—as would have been the result in this case—to say nothing of the injustice of requiring them to part with the land, which, if partition of the tract as a whole could be made, would be allotted to them, and which they might prefer not to sell at any price.

There is no danger that, by assuming jurisdiction to make partition of lands lying beyond the limits of the State in cases like this, a precedent will be established by which the courts of the State will, under all circumstances, be required to entertain jurisdiction of suits for partition of lands in other States, whenever the owners may reside, or have process served upon them within this State. Courts must, in each case that may be brought before them, decide whether it is of such a character that the relief asked for can be properly and conveniently granted; or whether it will be more appropriate to require the parties to pursue their remedy in the State where the land lies.

What is said by Judge Moncure, in the case of *Dickinson* v. *Hoomes*, 8 Gratt. pp. 416, 417, and the quotation made there from the case of *Harvey* v. *Richards*, 1 Mason, 381, 409, show clearly the power and duty of courts, in cases in which they have an unquestionable right to exercise jurisdiction, to decline to exercise it, if they are of opinion that, under all the circumstances, the matter can be more properly litigated, and the ends of justice more certainly attained, in a different forum.

The objection, as Mr. Justice Story says, is "not to the general authority of the court, but to the exercise of it under peculiar circumstances."

It is, therefore, with much confidence submitted that, notwithstanding the authorities apparently to the contrary, the true rule is, that courts of chancery have jurisdiction when all

parties are brought before them by service of process, or voluntary appearance, to decree partition of land lying in another State, whenever it appears that it can be conveniently made under their order, and that the ends of justice will be thereby promoted.

HINTON, J. delivered the opinion of the court.

The question in this case is one of importance, but of little intrinsic difficulty. It is this: Has a court in Virginia, when the defendants have appeared and answered, jurisdiction to partition lands, the major part of which lies within another State?

Now, it is a fundamental maxim of international jurisprudence that every State or nation possesses an exclusive sovereignty and jurisdiction within its own territory, and the "direct consequence of this rule is," says a learned author, "that the laws of every State affect and bind directly all property, whether real or personal, within its territory." Story's Conflict of Laws, 5, 18. Another consequence of this maxim is, that no State can, by its laws, and no court, which is but a creature of the State, can, by its judgments or decrees, directly bind or affect property beyond the limits of that State; and hence it is axiomatic that no writ of sequestration, or execution, or any order, judgment or decree of a foreign court, can be directly enforced against real estate situate without the limits of the foreign State.

*Id.* section 20, "such," says Chief Justice Parker, in *Blanchard V. Russell,* 13 Mass. 4, "is the necessary result of the independence of distinct sovereignties, and it is absolutely incompatible with the equality and exclusiveness of the sovereignty of different States or nations that any one nation should be at liberty to exercise dominion over property within the territory of another

State. But whilst this is true, it is undoubtedly well settled that in cases of fraud, trust or contract, courts of equity will, whenever jurisdiction over the parties has been acquired, administer full relief without regard to the nature or situation of the property in which the controversy had its origin, and even where the relief sought consists in a decree for the conveyance of property which lies beyond the control of the court, provided it can be reached by the exercise of its powers over the person, and the relief asked is of such a nature as the court is capable of administering." *Penn* v. *Lord Baltimore and notes*, 2 Lead. Cas. Eq. 1806, *et seq.; Farley* v. *Shippen*, Wythie's R. 254; 2 Story's Eq., sec. 1290, *et seq.; Dickinson* v. *Hoomes*, 8 Gratt. 353; *Barger* v. *Buckland*, 28 Gratt. 862; *Poindexter* v *Burwell, ante* page 507. But even as to these cases it must be borne in mind that the decrees of the foreign court do not directly affect the land, but operate upon the person of the defendant, and compel him to execute the conveyance, and it is the conveyance which has the effect, and not the decree. *Davis* v. *Headley*, 7 C. E. Green. 115; 4 Min. Inst., pt. 2d, page 1201. If, however, the relief asked cannot be administered by a decree *in personam*, without going further and acting upon the land, the court will refuse to entertain the bill. As this court said in a case which has been often quoted: "The distinction is clearly this, that where the decree is to affect the lands directly, as in the case of a suit brought at this court, to divide lands in another State, there the court would not have jurisdiction, because the process could not be effectual. * * * But where the decree is to affect only the persons of the defendants, in order to a complete execution of it, if the plaintiff succeed, * * * it is clearly held to be the settled law of the court, that jurisdiction thereof may be entertained." *Guerrant* v. *Fowler*, 1 Hen. & Mun. 5; *Morris* v. *Remington*, 1 Parson's Eq. 387; Westlake's Private Internat. Law, page 58.

Now, tested by these principles, it is perfectly manifest that a court of chancery in Virginia has no jurisdiction to decree a partition of lands in another State, and this, for the plain reason before given that the right to transfer, partition and change real estate, belongs exclusively to the State within whose territory it is situate. In order to make a partition the court must invade by its officers the soil of another State, and divide up and allot its lands to suit the views of a foreign jurisdiction. This cannot be done. *Carrerä* v. *Petty*, 2 Swant. 323, *note; Roberdeau* v. *Rous*, 1 Atk., 543; *Poindexter* v. *Burwell, supra;* 2 Story's Eq., sec. 1296, *et seq.;* 4 Min. Inst. 1201.

For these reasons the decree of the circuit court of Highland county must be reversed, and the bill be dismissed.

DECREE REVERSED.