## Wytheville.

## American Bonding Company of Baltimore, Md., and Others

## v.

## American Surety Company of New York, and Others.

### June 10, 1920.

1. Foreign Judgments and Decrees—*Title to Land.*—The courts of Virginia have no jurisdiction over titles to real estate in the District of Columbia.

2. Judgments and Decrees—*Construction of Judgments—Guardian and Ward—Case at Bar.*—A guardian owed his mother, his co-guardian, $2,000 and had secured it by a second lien on real estate in the District of Columbia, and this debt which he alleged belonged to his ward remained unpaid. The surety of the guardian contended that a decree of a Virginia court confirming the report of a commissioner that this $2,000 trust was put on the property in the District of Columbia to secure the ward money due her by her guardian, and it was to her advantage to take the property subject to the $2,000 trust, established a credit on the guardianship account for $2,000, and imposed upon a new guardian, appointed thereafter, the duty ·to take charge of the property and collect the rents. The decree further provided that the assets of the guardian and co-guardian were jointly and severally liable to the ward for the entire amount shown to be due by said guardians' account.

   *Held:* That the surety's contention could not be sustained.

3. Guardian and Ward—*Surety on Guardian's Bonds—Liability of Successive Sureties.*—As between different and several sureties on successive guardianship bonds, there can be no liability upon the surety for the second guardian on the second bond until there has been a settlement and delivery to its principal of the assets, or some part of them, for which the first guardian was then liable. He and his surety must remain primarily liable therefor until his obligation is discharged. The second guardian and his surety are responsible for any

27

loss occasioned the ward for his own neglect of duty, but cannot, under his bond, be held to have assumed the accrued liability of the surety on the first bond for the continued default of the first guardian.

4. FOREIGN GUARDIANS—*Real Property—Conflict of Laws—Law Rei Sitae.*—There is no question whatsoever that, according to the doctrine of common law, the rights of foreign guardians are not admitted over immovable property situate in other countries. Those rights are deemed to be strictly territorial, and are not recognized as having any influence upon such property in other countries, whose systems of jurisprudence embrace different regulations and require different duties and arrangements. No one has ever supposed that a guardian, appointed in any one State of this Union, had any right to receive the profits, or to assume the possession, of the real estate of his ward in any other State, without having received a due appointment from the proper tribunals of the State where it is situate. The case falls within the well-known principle that rights to real property can be acquired, changed, and lost only according to the law *rei sitae.*

5. REFERENCE—*Guardian Ad Litem Appointed as ·Commissioner.*—A guardian *ad litem* of an infant should not be appointed commissioner in a suit to which the infant was a party. The guardian *ad litem,* himself a party to the cause and representing the infant, standing in the place of the infant, who is also a party to the cause, should maintain an independent position. His first duty being to protect the rights of the infant, he could not properly discharge that duty and at the same time be an impartial judge as between the infant and those having conflicting interests.

6. INSURANCE—*Contract of Reinsurance.*—The general rule is that contracts of reinsurance are merely contracts of indemnity of the insurer, and that there is no privity between the insured policy holder and the reinsuring company.

7. SURETY COMPANY—*One Bonding Company Taking the Place of Another on Guardian's Bond—Liable to Minor.*—A bonding company applied to the State Corporation Commission of Virginia under Code of 1919, sec. 4217, for leave to withdraw its assets from the State and reinsure its risks in another company. The statute specifically requires the reinsuring company to assume the risks of the retiring company.

*Held:* That as both companies have invoked and received the advantages of the statute, they must be presumed to have assumed the burdens thereby imposed, and to have contracted with reference to the statute, and the contract comes within

the reason of the cases which hold the reinsuring company directly liable to the assured, and is not a mere reinsurance contract.

8. PARTIES IN INTEREST MUST BE IMPLEADED—*Multiplicity of Suits.*— Equity requires all parties in interest to be impleaded, so as to avoid delay and a multiplicity of suits.

9. MULTIPLICITY OF SUITS—*Privity of Contract—Reinsurance Contract.*—A bonding company abandoned its business in Virginia and reinsured its risks in another company. A decree on one of its bonds was against both companies. The second company contended that there was no privity of contract between it and the complainant.

*Held:* That as the suit was in equity, the beneficiary could not be required, after establishing the liability of the first company, to pursue the second company in another suit, as under its contract and section 4217, Code of 1919, the second company was ultimately responsible for the liability, the court rightly decreed against it.

10. GUARDIAN AND WARD—*Compound Interest.*—A new guardian is not responsible for compound interest upon the amount decreed in favor of the ward against the original guardian, upon the idea that the new guardian should long ago have sued the first guardian for a settlement, there being nothing in the record from which the court could estimate the time when the new guardian would have recovered, if he had been more vigilant, and what disposition he would have made of the funds, had he been successful.

Appeal from a decree of the Circuit Court of Fairfax county. Decree for complainant. Defendants appeal.

*Affirmed.*

The opinion states the case.

*Keith, McCandlish, Hall & Garnett* and *Allen A. Davis,* for the appellants.

*R. R. Farr, W. W. Millan* and *C. Vernon Ford,* for the appellees.

PRENTIS, J., delivered the opinion of the court.

We think it unnecessary to recite the numerous pleadings or to attempt to summarize the mass of evidence which this

voluminous record presents. It clearly shows that Caroline C. Gresham is entitled to recover the amount decreed in her favor by the trial court, and this is a controversy between the different sureties on the bonds of her successive guardians as to which is responsible therefor. Her original guardians were her mother, Fanny W. Gresham and her brother, Curtis E. Gresham, who gave as surety the American Bonding and Trust Company of Baltimore, which changed its name to the American Bonding Company of Baltimore, hereinafter called the Bonding Company.

Fanny W. Gresham died in October, 1907, so that at that date Curtis E. Grasham became the sole guardian of the complainant. The last settlement of the guardianship account was made September 20, 1908, and it showed a balance of $3,645.30 due the infant as of September 1, 1906. At the November term, 1911, of the Circuit Court of Fairfax county, upon the application of the Bonding Company, the surviving guardian, Curtis E. Gresham, being then in default, insolvent and unable to settle with an older sister of his ward for whom he was also guardian with the same surety, was removed, and Samuel W. Cockrell, of Washington, D. C. was appointed guardian of Caroline C. Gresham in his place and stead, and the American Surety Company of New York, hereinafter called the Surety Company became his surety. The order of removal expressly provided that it should not affect any liability of the Bonding Company as surety which had accrued prior to that time, and this would doubtless have been true if it had not so specified.

The first guardian neither paid the amount then due nor settled his accounts, and died before this suit was instituted. The trial court held the Bonding Company as his surety responsible therefor, and dismissed its cross-bill which sought to hold the new guardian and the Surety Company as his surety responsible for the loss.

These facts appear: Long before his removal as guardian Curtis E. Gresham owned a house and lot in the city of Washington, upon which he had executed two deeds of trust, one to secure $3,000, constituting the first lien, and the other to secure to his mother, who was the co-guardian, $2,000, constituting the second lien thereon. He afterwards conveyed the property to his mother subject to the two liens, then she died and devised it to her daughter, the complainant. Gresham was also the executor of his mother's will, and instituted a suit in the Circuit Court of Fairfax county for its construction. In that suit there was a commissioner's report and in response to the inquiry as to the interest of the infant defendant relative to the $2,000 lien on the property referred to, the commissioner reported thus: "This $2,000 trust was put on the Ingleside property to secure the infant, Caroline C. Gresham, money due her by her guardian, and it is to her advantage to take the property subject to the said $2,000 trust."

[1, 2] The cause was heard at the May term, 1911, upon that report which referred to many other matters, and a certain exception thereto having no relation to this controversy, was sustained. In other particulars the report was confirmed, but the decree uses this language: "The court * * * doth further establish that the estates of Fanny W. Gresham and C. E. Gresham are jointly and severally liable for the entire amount shown to be due by the said guardians' account. In other particulars the said report is confirmed, * * *." Upon this decree the appellant bases the claim that the property in Washington city then and thereby became the property of the infant Caroline C. Gresham; that it was a final decree binding because never appealed from by her; and that it establishes a credit on the guardianship account for $2,000, and imposed upon the new guardian who was appointed thereafter in November, 1911, the duty to take charge of the property and collect

the rents therefrom. As it appears to us the most casual consideration of this decree will show that none of these claims are justified. As to the title to the property the court had no jurisdiction whatever, because the courts of Virginia have no jurisdiction over titles to real estate in the District of Columbia. The decree does not undertake to assert such jurisdiction or to direct any action whatever. The property had been devised to Caroline C. Gresham, subject to the liens, and while it is claimed that at that time it was worth $5,300, there is no sufficient evidence in the record to support that view. In addition to this it is shown that the estate of the testatrix was insolvent. That the decree should not be so construed is apparent from the fact that upon its face instead of authorizing such a credit, it held the estate of the testatrix and the surviving guardian jointly and severally liable for the entire amount shown to be due by them, and in this amount was included the $2,000 which was due by her co-guardian, Curtis E. Gresham. The suit was brought for the construction of the will, had only remote connection with the guardianship account, and no provision whatever was made in the decree for the settlement of the prior lien of $3,000 which rested upon the property. Just what the decree did mean, so far as it affected the rights of this infant may not be clear, but the then guardian did not construe it either as having any effect whatever upon the title to the property, or as the basis of a credit upon his guardianship account. The $2,000 involved was his personal obligation which has never been satisfied.

We must not forget that the issue here involved is whether the Bonding Company or the Surety Company is primarily liable for the balance due. We do not now inquire as to the default, if any, of the second guardian, Cockrell, and the consequent liability of the Surety Company, because the primary liability for the loss which was then

apparent rests upon Gresham and his surety, and until his account is settled and the assets with which he is properly chargeable are accounted for to Cockrell, the new guardian, in whole or in part, the liability of his surety, the Surety Company, as between it and the Bonding Company, for the defaults of Cockrell, the second guardian, if they exist, does not attach. Whatever their responsibility to the infant may be, they have incurred no obligation to the former guardian and his surety, which relieves them of their liability previously incurred and never discharged.

As stated, Gresham, the guardian, owed his mother, his co-guardian, $2,000, and had secured it by a second lien on the real estate, and this debt which he alleged belonged to the infant, still remains unpaid. Gresham's surety, the Bonding Company is here claiming that Cockrell and his surety, the Surety Company, should be held accountable for the loss of a debt which its principal Gresham owed to his ward and has never paid. The Bonding Company surety is pleading the default of its own principal and his failure to account for funds for which it, the Bonding Company assumed responsibility. This Washington city property was sold to satisfy the debt of the prior lienor after the new guardian had been appointed, as the result of which Gresham's wife ultimately acquired the legal title thereto, and it was made subject to two new liens for similar amounts and priorities, respectively, that is, a first lien of $3,000, and a second lien of $2,000, and Gresham sent the note of his wife for $2,000, secured by this second lien to Cockrell in response to his request for settlement, who declined to accept it without the approval of court. The property was again sold several years afterwards and did not yield enough to pay anything upon this second lien, and the substituted debtor, the wife of Gresham, denies her liability for the amount under a statute of the District of Columbia.

The only other effort at a settlement made by Curtis

Gresham was the sending to Cockrell of nine other notes of his wife, aggregating $960, secured upon certain lots in the District of Columbia, which were already subject to a prior lien for $450. Nothing whatever has been realized on these notes, most of the lots have been sold to satisfy the prior lien and the record shows that these notes never had any substantial value.

[3, 4] There is much confusion and conflict in the testimony, but there can be little doubt about the facts stated. These facts are controlling and fully justify the decree under review. As between different and several sureties on successive guardianship bonds, there can be no liability upon the surety for the second guardian on the second bond until there has been a settlement and delivery to its principal of the assets or some part of them for which the first guardian was then liable. He and his surety must remain primarily liable therefor until his obligation is discharged. The second guardian and his surety are responsible for any loss occasioned the ward for his own neglect of duty, but cannot under such a bond as this be held to have assumed the accrued liability of the surety on the first bond for the continued default of the first guardian.

As responsive to the claim that the new guardian appointed by the Circuit Court of Fairfax county, Virginia, should have taken charge of and collected the rents of the property in Washington, D. C., this from Story on Conflict of Laws (8th ed.), sec. 504, is pertinent: "There is no question whatsoever, that according to the doctrine of common law, the rights of foreign guardians are not admitted over immovable property situate in other countries. Those rights are deemed to be strictly territorial, and are not recognized as having any influence upon such property in other countries, whose systems of jurisprudence embrace different regulations, and require different duties and arrangements. No one has ever supposed that a guardian,

appointed in any one State of this Union, had any right to receive the profits, or to assume the possession, of the real estate of his ward in any other State, without having received a due appointment from the proper tribunals of the State where it is situate. The case falls within the well-known principle that rights to real property can be acquired, changed, and lost only according to the law *rei sitae*." *Dickinson* v. *Hoomes*, 8 Gratt. (49 Va.) 379, recognizes the same doctrine.

In *Clendenning* v. *Conrad*, 91 Va. 419, 21 S. E. 818, it is said that the general rule is that a guardian cannot be sued out of the jurisdiction in which he qualifies, and that his powers are strictly local.

In *Contee* v. *Lyons*, 8 Mackey (19 D. C.), p. 207, it is held that the high court of chancery of Maryland had no jurisdiction to appoint a trustee to convey real estate in the District of Columbia, and that the decree appointing him is a nullity.

It hardly needs any citation to sustain this general proposition but those who may be curious on the subject will find these cases instructive: *Poindexter* v. *Burwell*, 82 Va. 512; *Gibson* v. *Burgess*, 82 Va. 650; *Wimer* v. *Wimer*, 82 Va. 890, 5 S. E. 536, 3 Am. St. Rep. 126; *Hotchkiss* v. *Middlekauf*, 96 Va. 649, 32 S. E. 646, 43 L. R. A. 806; *Proctor* v. *Proctor*, 215 Ill. 275, 74 N. E. 145, 69 L. R. A. 673, note, 106 Am. St. Rep. 168, 2 Ann. Cas. 819; *Brine* v. *Hartford, etc., Ins. Co.*, 96 U. S. 627, 24 L. Ed. 861.

It was said in argument that the trial court was of opinion that the decree referred to was null and void because the guardian *ad litem* of the infant defendant was also the commissioner who made the report upon which the decree was based, and the case of *Cole* v. *Johnson*, 53 Miss. 94, is cited as showing that this was error. It is true that in that case the court declined to reverse upon that ground, but in that connection it is said that inasmuch as it might become

the duty of the guardian *ad litem* to except to the account returned by himself as commissioner, it is bad practice to appoint the same person to both positions. In Virginia it has been held that an attorney employed in a cause is not a competent commissioner to take an account ordered in that cause, because a commissioner acts in a judicial capacity. *Fayette Land Co.* v. *Louisville, etc., R. Co.*, 93 Va. 274, 24 S. E. 1016.

In *Dillard* v. *Krise*, 86 Va. 414, 10 S. E. 430, it is said that, "The fifth exception to the report is upon the ground that it appears upon its face to have been made by one who is a creditor and a party to the suit. As such, though he is a commissioner of the court, he is incompetent to make a report in the cause. *Simmons* v. *Lyles*, 27 Gratt. (68 Va.) 922, 928. In *Bowers* v. *Bowers*, 29 Gratt. (70 Va.) 697, this court decreed that an attorney employed in a cause is not a competent commissioner to take an account ordered in the cause. No judge would sit in a cause wherein he was interested or a creditor; and a commissioner of accounts is a quasi judicial character, and if the law does not, in terms, disqualify him to take and report an account in a cause wherein he is a party, the spirit of it does."

[5] As to the decree, while we cannot agree that it is null and void, it is clear that the judicial position of the commissioner imposed upon him duties which were inconsistent with the obligations which had been assumed by him as the guardian *ad litem* of an infant who had a substantial interest in his report as commissioner. The guardian *ad litem*, himself a party to the cause and representing the infant, standing in the place of the infant, who is also a party to the cause, should maintain an independent position. His first duty being to protect the rights of the infant, he could not properly discharge that duty and at the same time be an impartial judge as between the infant and those having conflicting interests. If as commissioner he

decided the question involved against the infant, his duty as guardian *ad litem* would require him to except to his own report, and then his disqualification to act in either capacity would be manifest. In this case, if the decree had been appealed from, on this ground, and any injury shown it would probably have been reversed.

Another assignment of error grows out of these circumstances: In 1914, before the institution of this suit, the Bonding Company determined to abandon its business in this State and reinsure its risks in the Fidelity and Deposit Company of Maryland, hereafter called the Fidelity Company. It took advantage of the statute (Code, 1919, sec. 4217) and withdrew its bonds which had been deposited with the treasurer of the State as additional security for its Virginia policyholders. The decree in favor of the plaintiff is against both the Bonding Company and the Fidelity Company, and the latter company assigns this as error. The ground of this assignment is that the contract between the two companies is purely a contract of reinsurance, and that there is no privity of contract whatever between the complainant and the Fidelity Company.

[6] It may be regarded as settled that the general rule is that contracts of reinsurance are merely contracts of indemnity of the insurrer, and that there is no privity between the insured policyholder and the reinsuring company. Among the recent cases are *Moseley* v. *Liverpool, etc., Ins. Co.,* 104 Miss. 326, 61 So. 428; *Vial* v. *Norwich Ins. Co.,* 257 Ill. 355, 100 N. E. 929, 44 L. R. A. (N. S.) 317, Ann. Cas. 1914A, 1141; *Southwestern, etc., Ins. Co.* v. *Stein* (Tex. Civ. App.), 180 S. W. 1165. There are, however, some well-recognized exceptions to this general rule, depending upon the precise terms of the contract, of which the case of *Johannes* v. *Phoeniz Ins. Co.,* 66 Wis. 50, 27 N. W. 414, 57 Am. Rep. 249, is an illustration. It is there said that the contract was not strictly a reinsurance contract.

There one company, the Standard, sold and turned over to the reinsuring company, the Phoenix, its entire business and good will in the United States, together with a large amount of bonds and other property, in consideration whereof the Phoenix reinsured all the risks of the Standard Company upon property in the United States and agreed that all losses thereafter arising under the Standard policies upon such property should be borne by the Phoenix Company and should be paid, satisfied and discharged by it; and it was held that a policyholder could sue the reinsuring company at law.

In *Glen* v. *Hope Mutual Ins. Co.*, 56 N. Y. 379, the reinsuring company agreed to reinsure the retiring company on all risks for which its policies were then outstanding, to assume all such policies and to pay to the holders thereof ˹l such sums as the original company by force of such policies might become liable to pay; and it was there held that a policyholder could sue the reinsuring company.

The exception is still further extended in *Shoaf* v. *Palentine Ins. Co.*, 127 N. C. 308, 37 S. E. 451, 80 Am. St. Rep. 804. There the reinsuring company agreed to assume all liabilities under any outstanding policies of the reinsured then existing, on property in the United States and Canada and on any policy that might be written thereafter by the reinsured for the benefit of and under the direction of the reinsuring company, and it was expressly provided that the contract should only be effective as between the companies, and that policyholders should not sue the reinsuring company. It was, however, held that this agreement was more than a mere reinsuring agreement, and that the policyholder might sue the reinsuring company. Other pertinent cases are *Barnes* v. *Hekla Fire Ins. Co.*, 56 Minn. 38, 57 N. W. 314, 45 Am. St. Rep. 439 (note); *Ruohs* v. *Traders' Fire Ins. Co.*, 111 Tenn. 405, 78 S. W. 85, 102 Am. St. Rep. 790. See also note, *Traders' Ins. Co.* v. *Aachen, etc., Ins. Co.*, 150 Cal. 370, 89 Pac. 109, 8 L. R. A. (N. S.) 862.

[7] Coming to the case in judgment we find that the Bonding Company applied to the State Corporation Commission under the statute referred to for leave to withdraw its assets from this State. That statute specifically requires the reinsuring company to assume the risks of the retiring company. While the contract here involved does not contain appropriate language to indicate that it is anything more than a mere reinsuring contract, at the same time, under it both companies have invoked and received the advantages afforded them by the Virginia statute. They must therefore be presumed to have assumed the burdens thereby imposed, and to have contracted with reference to that statute. Having withdrawn the assets of the Bonding Company so as to put them beyond the reach of its Virginia policyholders, and the Fidelity Company having received the valuable considerations contemplated by the transfer to it of the Bonding Company's entire Virginia business, cannot escape the consequences which are imposed by the statute which should be read into the contract. Thus construed, the contract comes within the reason of the cases which hold the reinsuring company directly liable to the assured, and is not a mere reinsurance contract.

There are other cases in which it is held that one cannot sue another at law who has assumed the obligation of the original debtor because of the lack of privity, but the rule has been criticised and should not be extended.

[8, 9] We have referred to the question as though the complainant were suing at law. Perhaps this was unnecessary for the assignment is without merit for another reason. This is a suit in equity, and it is the boast of equity that it requires all parties in interest to be impleaded so as to avoid delay and a multiplicity of suits. It hastens to "put the saddle upon the right horse." It would be a reproach to the law in a case like this to require the beneficiary, after having established the liability of the Bonding

Company, which has removed its assets from this State, thereafter to pursue the Fidelity Company in another suit, if it should become necessary and she should be so advised. Equity abhors such useless circuity. As under its reinsuring contract and the statute the Fidelity Company is ultimately responsible for this liability, the court rightly decreed against it.

[10] The complainant alleges, by way of cross-error, that the court erred in not holding the new guardian responsible for compound interest upon the amount decreed in her favor. This is based upon the idea that the new guardian ought long ago to have sued the first guardian and the Bonding Company for a settlement, and assumes that if he had so sued he would have recovered the amount due and hence would be liable as guardian for compound interest thereon from the time he received it or should have received it. We cannot accede to this view. There is nothing in the record from which we can estimate the time when the new guardian would have recovered if he had been more vigilant, nor what disposition he would have made of the funds had he been successful. Under the circumstances of this case he should not be held responsible for interest upon an amount which he has never received.

We are of opinion to affirm the decree.

*Affirmed.*