JOHN ROBER, APPELLANT, V. ANTON MICHELSEN, APPELLEE.

FILED JUNE 4, 1908. No. 15,228.

1. States: RIVERS AS BOUNDARIES. If the middle of a river forms a
state boundary, that boundary follows any changes in the stream
which are due to gradual accretions to or degradation of its
banks.

2. ——: ——. If the change is sudden and rapid, such as occurs
when a river forms a new course by cutting through a bend, the
boundary does not follow the stream, but remains in the middle
of the old channel.

3. ——: ——. From about the year 1855 until about 1860, a tract
of land within the state of Nebraska was bounded on the east
by the Missouri river. Within three years of the last-named
date said stream gradually encroached upon said land until all
of said tract was under water; and, as the river advanced west-
ward, accretions attached to the east bank of the river until they
covered the site of the land first herein referred to. In 1874
said river suddenly changed its course much further east, and
the water therein cut a new channel, so that said alluvion was
isolated from the land in Iowa. *Held*, That by the first process
of erosion and accretion said land was transferred from Nebraska
to Iowa, and that the operation of avulsion did not restore said
land to the former state.

4. Courts: JURISDICTION: LEGISLATIVE POWERS. The legislature is
without power to authorize the courts of Nebraska to quiet title
to lands within the boundaries of a sister state.

APPEAL from the district court for Washington county:
ALEXANDER C. TROUP, JUDGE. *Affirmed.*

*John Lothrop,* for appellant.

*E. C. Jackson, contra.*

ROOT, C.

Suit to quiet title to real estate. The court held it did
not have jurisdiction of the controversy, because the land
therein involved was in Iowa, and dismissed the action.
Plaintiff appeals.

The land was entered in 1855, and patent therefor was

issued in 1860, and, until the last-mentioned date, said land was all on the west side of the Missouri river and in Nebraska. During the years 1863, 1864 and 1865, the river gradually encroached on and finally washed away all of said land, so that none of it remained above water, but all formed part of the bed of said river; and still later said land was covered by accretions, which had attached to the eastern bank of the river, and the tract in dispute was included within the state of Iowa and east of said stream. In 1873 or 1874, the date being uncertain and unimportant, the waters of said river suddenly abandoned the old bed, and cut a new channel a very considerable distance east of the left bank of said stream, whereby said land was transferred from the east to the west side of said river, and was thereafter bounded on the north and east by the right bank of the new and present channel of said watercourse, and on the west and south thereof by the bed of the old channel, which became a lake.

1. The law upon this subject is plain, and was settled beyond peradventure by the supreme court of the United States in *Nebraska v. Iowa,* 143 U. S. 359, 36 L. ed. 186, and reaffirmed in *Missouri v. Nebraska,* 196 U. S. 23, 49 L. ed. 372. The boundary between Iowa and Nebraska was fixed by the respective acts of congress admitting said states to the Union as the center of the channel of the Missouri river. That boundary may and does fluctuate with the changes of the channel of that stream where the alteration is gradual and imperceptible; but, when by a sudden variation the stream seeks and marks for itself an entirely new course and abandons the old path, the boundary remains along the line which constituted the center of the old channel. Applying the rule to the instant case, when this suit was instituted the land therein described was in Iowa, and not within the jurisdiction of the courts of Nebraska.

2. Counsel argues that citizens in their litigation cannot collaterally attack and have adjudicated state boundaries,

7.

and that, as the twentieth session of the Nebraska legislature, in chapter 25, laws 1887, defined the eastern boundary of Washington county as the middle of the channel of the Missouri river, the courts cannot look beyond that act for proof of the location of said border. Although the legislature is vested with comprehensive power in its department of government, yet it cannot by mere enactment, without the cooperation of an adjoining state, extend the territory of Nebraska at the expense of that neighbor, nor thereby invest its courts with extraterritorial jurisdiction over the lands of a sister state. *Farmers Loan & Trust Co. v. Postal Telegraph Co.*, 55 Conn. 334, 3 Am. St. Rep. 53; *Wimer v. Wimer*, 82 Va. 890, 3 Am. St. Rep. 126; *Lindley v. O'Reilly*, 50 N. J. Law, 636, 7 Am. St. Rep. 803; *Meyler v. Wedding*, 107 Ky. 310, 92 Am. St. Rep. 347; *Fall v. Fall*, 75 Neb. 120.

In the state tax suit for 1904 plaintiff herein defended an attempt to collect old delinquent taxes levied upon the real estate in controversy by the authorities of Nebraska, upon the ground that, by reason of the facts hereinbefore referred to, said land had been transferred from Nebraska to Iowa, and the court in that suit, on those facts, found for this plaintiff.

The district court was clearly right, and we recommend that its judgment be affirmed.

FAWCETT and CALKINS, CC., concur.

By the Court: For the reasons stated in the foregoing opinion, the judgment of the district court is

AFFIRMED.