IOWA RAILROAD LAND COMPANY, APPELLANT, V. GEORGE
COULTHARD, APPELLEE.

FILED JULY 11, 1914.   No. 17,532.

1. **Boundaries:** NAVIGABLE STREAMS: CHANGE OF CHANNEL.   Where a
stream which is a boundary from any cause suddenly abandons its
old and seeks a new bed, such change of channel works no change
of boundary; the boundary remains as it was in the center of the
old channel, although no water may be flowing therein. *State of Ne-
braska v. State of Iowa*, 143 U. S. 359.

2. ———: ———: ———.   If the change in the stream is violent and
visible, and arises from a known cause, such as a freshet, or a cut
through which a new channel has formed, the original thread of the
stream continues to mark the limits of the two estates.   Gould, Waters
(3d ed.)   sec. 159.

3. **Adverse Possession:** SUFFICIENCY OF EVIDENCE.   The evidence exam-
ined, and *held* to support the finding and judgment of the court be-
low.

APPEAL from the district court for Washington county:
ALEXANDER C. TROUP, JUDGE.   *Affirmed.*

*E. B. Carrigan* and *Sanford H. Cochran,* for appellant.

*W. C. Walton* and *J. S. Dewell, contra.*

HAMER, J.

This is an appeal from Washington county.   There was
a petition in equity to quiet title to about 500 acres of
land.   The answer sets up want of jurisdiction, accretion,
and adverse possession.   There is a reply and an affirma-
tive plea of avulsion.

The United States made its survey in Iowa in 1852 and
in Nebraska in 1856.   It is claimed by the Iowa Railroad
Land Company that between the United States survey of
1852 and the survey of 1856 the Missouri river gradually
cut to the north until it cut away all of section 34 in Iowa,
and that it was running along near the north line of sec-

tion 34 in April, 1857; that by reason of the breaking up of an ice gorge the Missouri river suddenly changed its channel, and shot into Nebraska and left a body of land between the Missouri river and Soldier river; that before said avulsion the lands had been added to the Nebraska side and were embraced within the government survey of 1856. The trial court seems to have specially found that the change was caused by an avulsion; that the title to the land was legally in the Iowa Railroad Land Company, and but for the plea of adverse possession the company would be entitled to all the lands in controversy. The particular 160 acres is said to be located in the north half of section 21 under the Nebraska survey. The court found for the defendant as to his plea of adverse possession to 160 acres of the land. The appeal involves this tract of 160 acres. The special finding of the trial court as to the changes of the Missouri river is set forth in the decree, and reads: "And the court, being fully advised in the premises, finds especially at the request of the plaintiff that the Missouri river on or about March 5, 1857, ran east along or near the north line of section 34, township 79, range 45 west 5th P. M.; that about April 10, 1857, the said Missouri river suddenly abandoned its channel and made a new channel to the south and west, by which it left the land in question north and east of it, and between it and the Soldier river; and the courts of Nebraska have jurisdiction of all lands within the United States survey of 1856 without regard to the enabling act by which Nebraska was admitted into the Union, except such lands, if any, as may have accreted to the Iowa bank before the said avulsion occurred. And the court further finds that all of the land described in the petition of the plaintiff is within the state of Nebraska and the county of Washington, and this court has jurisdiction of the subject matter of this action. And the court further finds that the north half of section 21, township 19 north, range 12 east, if extended, and the south half of section 34, township 79, range 45 west 5th P. M., if extended, are substantially the same

tract.   And the court further finds that the plaintiff is
the owner of and has a legal estate in all the lands de-
scribed in its petition in this action, except those lands
described as situated in the said section 34, township 79,
range 45 west 5th P. M., as said section would exist if ex-
tended to the full limits and extent of one mile square as
specifically described in defendant's answer, and the title
thereto is forever quieted in this plaintiff.   And the court
further finds that the defendant George Coulthard has
been in the open, notorious, exclusive, uninterrupted ad-
verse possession under color of title, and claiming to be
the owner thereof, of all lands described in plaintiff's pe-
tition, situated in said section 34, township 79, range 45
west 5th P. M., as claimed by plaintiff to be situated in
the north half of said section 21, for more than ten years
prior to the commencement of this action, and was, at the
commencement of this action, the owner thereof and in ·
the actual possession of the same, and the plaintiff was
not and is not the owner thereof and had no estate therein,
at the commencement of this action.   *   *   *   It is there-
fore considered and decreed by the court that as to all the
lands situated and lying in said section 34, township 79,
range 45 west 5th P. M., and set forth and described in
defendant's answer, the plaintiff not being the owner there-
of at the commencement of this action, the said suit in
relation thereto is hereby dismissed at the cost of the
plaintiff taxed at $———.''

The land in dispute, under the evidence and special find-
ings of the trial court, is in Nebraska.   The evidence of
Chambers Hester justifies the conclusion that section 34,
originally in Iowa by the Iowa survey, had been cut away
by the river so that the river ran along near the north
boundary of that section.   "Q. Where was the Missouri
river running with reference to the north line of section
34 at the time it made its change into Nebraska?  A. Why,
it ran right along the line pretty close to it.   Q. What did
it do in the spring of 1857, by way of changing its chan-
nel?  Describe to the judge how the Missouri river acted
96 Neb. 39

in the spring of 1857 about changing its channel to Nebraska, if it did. A. It changed its channel onto the Nebraska side and cut around quite a body of land." It appears that the avulsion changed the course of the stream so that it ran over into Nebraska, and the Soldier river seems to have declined to run toward the new channel of the Missouri, and it kept along the old channel and more or less occupied it. At the time of said avulsion the greater part of said section had become a part of Nebraska. The plaintiff's lands do not appear to have been within the original boundary of fractional section 34 in Iowa. It will be seen that the line of these surveys probably conflict. It will be seen that the boundary between the states was more or less uncertain by reason of the fact that it changed with the accretion which displaced it. It had no certain stopping place.

The boundary between the states, if the surveys did not overlap, was the central thread of the Missouri river. This central thread changed as the stream changed. When the stream cut its way into the north side of section 34, the central channel changed farther and farther over to the Iowa side. When the avulsion occurred (to which all parties agree) the channel of the Missouri river, about half a mile in width, suddenly changed and went over into Nebraska. Because of the sudden change the dividing line between the states remained where it was. It then remained in what had been the central thread of the Missouri river. An examination of the litigation touching this subject shows apparently some uncertainty. See *State of Nebraska v. State of Iowa,* 143 U. S. 359; *Coulthard v. Davis,* 101 Ia. 625.

It is contended by the appellant that the appellee made application to the state of Iowa to have the land in the abandoned channel of the Missouri river surveyed and to purchase the same, and it is argued that because he did so therefore his claim now is without merit. We do not so regard it. He might have sought this method of terminating a troublesome and uncertain litigation. He was at

liberty to maintain what he conceived to be his rights by any lawful method. The brief of appellant graphically sets forth the uncertainty of conditions affecting the title. "We find in the record of evidence that the Missouri river, since the United States survey of 1852 in Iowa, has made many changes in the vicinity of this land; that the original government lines and corners were obliterated; that a perfect jungle existed in many parts of this great body of land now located between the Soldier river in Iowa and the present Missouri river; that squatters have roved over it from point to point sojourning for a time and removing to some other part."

In *Coulthard v. Davis,* 101 Ia. 625, is a discussion touching the Missouri river and where it ran. It is said in the opinion: "The evidence in this case quite satisfactorily shows, that in 1856, when the land adjoining the Missouri river in Iowa was surveyed by the general government, the main channel of said river was a mile and a quarter, or more, east of its present location. Since said time there has been added to the Iowa side the tract of land in controversy, as well as other land, embracing in all several hundred acres. Whether this land has been added in such a way as to be accretion, or whether it has been added by a sudden and entire change in the river, detaching this body of land from the west bank of the river, and attaching it to what was formerly the east bank of the river, in such a way as that it is capable of identification, is the question we are called upon to determine." There is then a discussion of the condition of the land, from which the court concludes that it was not added by accretion; that the soil was too rich; that it had cottonwood trees upon it from 15 inches to 2 feet in diameter; and that these trees would not have been produced within the time elapsing if the land had been added by accretion. The conclusion of the court therefore was that the judgment of the court below should be affirmed. All the evidence tends to show an avulsion by which the Missouri river left its old channel and came over into Nebraska.

leaving land on the east side included in the survey of the government when the Nebraska survey was made.

The evidence as to adverse possession of the 160 acres by defendant is not as certain as we could wish. It is of such a character that we cannot say that the finding and judgment of the district court are wrong. The judgment is therefore

AFFIRMED.