WILLIAM H. MILLER, JR., APPELLEE, V. H. J. MCLAUGHLIN ET AL., APPELLANTS.

FILED MARCH 12, 1929. No. 26612.

O. S. *Spillman, Attorney General,* and *George W. Ayres,* for appellants.

*Seymour L. Smith, contra.*

Heard before GOSS, C. J., ROSE, DEAN and THOMPSON, JJ., and HASTINGS and REDICK, District Judges.

ROSE, J.

This is a suit in equity for an injunction to prevent the secretary of the department of agriculture and the chief game warden of Nebraska from enforcing the legislative act containing the following provisions in so far as they relate to the waters of the Missouri river:

"No person shall take or attempt to take any fish except minnows from the waters within the state of Nebraska with nets, traps or seines. Carp, suckers, gars and buffalow fish may be taken with a spear during the months of March to November inclusive. The possession of any and all seines, except minnow seines, as provided in section 7356, Compiled Statutes of Nebraska for 1922, as amended, nets or traps, except as authorized by the department of agriculture, shall be unlawful." Laws 1927, ch. 126, sec. 10.

Plaintiff is a resident of Nebraska and owns valuable fishing nets, traps and seines. He insists that he uses them exclusively in taking fish from the Missouri river. His petition for an injunction contains pleas that the act of the Nebraska legislature is unconstitutional as applied to the. Missouri river; that defendants are threatening to enforce it and to prevent plaintiff, by the use of his nets, traps and seines, from taking fish from the waters west of the middle of the channel; that congress granted to Iowa and Nebraska concurrent jurisdiction over the Missouri river; that Iowa permits fish to be taken therefrom in the manner forbidden by the act of the Nebraska legislature; that those states have not taken concurrent or united action making effective their concurrent jurisdiction; that, in absence of such action or of an effective compact, Nebraska was without power to enact legislation preventing plaintiff from using his property to take fish from any part of the Missouri river; that the act, if enforced, will interfere with his personal and property rights and his lawful means of livelihood and result in the illegal confiscation of his nets, traps and seines in violation of the state and the federal Constitutions.

Defendants denied the invalidity of the legislative act and pleaded authority to enforce it.

Upon a trial of the cause the district court found the issues of law and fact in favor of plaintiff and granted his prayer for a permanent injunction. Defendants appealed.

The question presented by the appeal is the validity of the act as applied to Missouri river waters in Nebraska between the middle of the main channel and the Nebraska bank. The act applies alone to waters within the boundaries of Nebraska and defendants confine their jurisdiction thereto.

The admission of Nebraska into the Union on an equality with the original states established her state sovereignty over the entire area within her boundaries, except as restricted by treaty, by act of congress or by the federal Constitution. The eastern boundary of Nebraska is

the "middle of the channel" of the Missouri river. 13 U. S. St. at Large, ch. 59, sec. 2, p. 47; Comp. St. Neb. 1922, p. 28. The western boundary of Iowa east of Nebraska is the same. An act of congress provides:

"The said state of Iowa shall have concurrent jurisdiction on the river Mississippi, and every other river bordering on the said state of Iowa, so far as the said rivers shall form a common boundary to said state, and any other state or states now or hereafter to be formed or bounded by the same; such rivers to be common to both." 5 U. S. St. at Large, ch. 48, sec. 3, p. 743; 9 U. S. St. at Large, ch. 82, p. 52.

The jurisdiction of Nebraska is not limited to the western bank of the river, unless the restriction is imposed by the words "shall have concurrent jurisdiction" as they appear in the provision quoted. The meaning of the expression has been the subject of judicial discussion and of some diversity of opinion. The better view seems to be that those words do not prevent one state from exercising generally civil and criminal jurisdiction over that part of the river within her own boundaries. The power to make treaties has been committed to the federal government and not to individual states. One state cannot require another to unite in treaties, laws, contracts or compacts. If Iowa and Nebraska, with a common boundary in the Missouri river, do not agree on public policy or on methods of exercising concurrent jurisdiction granted by congress, the river is not for that reason a zone without police protection, where the offenses known to criminal law may be committed with impunity. The exigency of preserving order along the border does not necessarily await the concurrent action of two states. Their interests may conflict and they may never agree. The concurrent jurisdiction authorized by congress is not "over" or "in" the river, but "on" the river. Each state, as to river waters within her own boundaries, has rights and powers not committed to the adjoining state. The supreme court of the United States once took occasion to say:

"To avoid misunderstanding it may be well to add that the concurrent jurisdiction given is jurisdiction 'on' the river, and does not extend to permanent structures attached to the river bed and within the boundary of one or the other state." *Wedding v. Meyler,* 192 U. S. 573, 585.

It is clear, therefore, that concurrent jurisdiction is not all-inclusive as applied to the Missouri river. The sovereign power to define crimes and to authorize penalties therefor is inherent in state government. The exercise of police power to protect food at the source of supply within state boundaries is a legitimate function of sovereignty. *Fisher v. Board of Regents,* 108 Neb. 666; *McFadden v. Denter, ante,* p. 38. The natural run of fish from the Missouri river into Nebraska rivers and creeks affects the food supply of the state. Concurrent jurisdiction of Nebraska and Iowa "on" the Missouri river does not prevent the legislature of Nebraska, without the consent of Iowa, from passing laws to prevent fishermen from interfering with the run of fish by stretching nets across Nebraska streams at confluences with the Missouri river. Protection of fish generally in waters within the boundaries of the state is equally clear. There is the highest authority for these views. On this subject the supreme court of the United States spoke as follows:

"The territorial limits of Kentucky extend across the river to low-water mark on the northerly shore. * * * And we think it clear that no limitation upon the power of that commonwealth to protect fish within her own boundaries ·by proper legislation resulted from the mere establishment of concurrent jurisdiction by the Virginia Compact." *Nicoulin v. O'Brien,* 248 U. S. 113.

Plaintiff's understanding of concurrent jurisdiction is also at variance with the following view:

"Undoubtedly one purpose, perhaps the primary purpose, in the grant of concurrent jurisdiction was to avoid any nice question as to whether a criminal act sought to be prosecuted was committed on one side or the other of the exact boundary in the channel, that boundary some-

times changing by reason of the shifting of the channel."
*Nielsen v. Oregon,* 212 U. S. 315.

To prevent conflict of authority and double punishment in the exercise of concurrent jurisdiction granted by congress to two states, where there is doubt about the exact situs of a crime committed on or near the boundary line in a river, the state first acquiring jurisdiction may retain it to the exclusion of the other.

.Cases in federal district and circuit .courts containing interpretations of concurrent jurisdiction at variance with rulings of the supreme court of the United States have been cited, but are of course not controlling.

Plaintiff insists that.he owned and lawfully used his nets, traps and seines before the legislative .act assailed was passed, and argues that they will be depreciated in value or destroyed without due process of law in violation of the Constitution, if the legislation is enforced. A valid exercise of police power may affect or destroy values, where the use of the property for its original purpose has become unlawful by a change in public policy as disclosed by a new statute. Prohibition thus affected property in breweries, but the legislation on that subject was nevertheless sustained. *Mugler v. Kansas,* 123 U. S. 623.

Invalidity of the legislative act in controversy has not been shown. The.injunction granted by the district court is therefore reversed and the action dismissed.

REVERSED AND DISMISSED.

Note—See Constitutional Law, 12 C. J. 931 n. 31— Criminal Law, 16 C. J. 61 n. 12, 168 n. 99—States, 36 Cyc. 829 n. 22, 830 n. 32, 840 n. 29—Treaties, 38 Cyc. 965 n. 42.