FIRST NATIONAL BANK OF MISSOURI VALLEY, IOWA, AP-
PELLEE, V. ELVIN E. MCFERRIN, APPELLANT.

7 N. W. (2d) 173

FILED DECEMBER 23, 1942. No. 31471.

618

*Chatt & Ellenberger,* for appellant.

*O'Hanlon & O'Hanlon* and *Clarence W. Kellogg, contra.*

Heard before SIMMONS, C. J., ROSE, EBERLY, PAINE, CARTER, MESSMORE and YEAGER, JJ.

YEAGER, J.

This is an action in ejectment by the First National Bank of Missouri Valley, Iowa, a corporation, plaintiff and appellee, against Elvin E. McFerrin and others, defendants, which was tried to a jury in the district court for Washington county, Nebraska. At the conclusion of the evidence the plaintiff moved the court to discharge the jury and render judgment in favor of plaintiff and against the defendants in accordance with the prayer of the petition, which motion was sustained and judgment was accordingly entered. From this judgment Elvin E. McFerrin is the only appellant.

The land involved in this action is on the east or Iowa side of the Missouri river, and is described in the petition as follows: Tax lot number seven (7), the west half of the southwest quarter (W½ SW¼) and the southeast quarter of the southwest quarter (SE¼ SW¼), all in section twenty (20) ; the east half of the southeast quarter (E½ SE¼) and the southeast quarter of the northeast quarter (SE¼ NE¼), all in section nineteen (19) ; all in township nineteen (19) north, range twelve (12) east of the sixth P. M., in Washington county, Nebraska.

The petition declares that the fee simple title to the lands is in the plaintiff, that the defendant Elvin E. McFerrin is in possession, and that plaintiff is entitled to immediate possession.

The answer on which the case was tried contains a general denial, a denial of plaintiff's title and right of possession and an allegation that the court was without jurisdiction over the subject-matter.

Numerous errors have been assigned as grounds for reversal, but only a few of them require consideration, and these will be discussed in the order of their relative importance. The assignment of first importance is that the court erred in entertaining jurisdiction of the subject-matter of the action, for the reason that appellant contends that the real estate involved here is not within the boundaries of the state of Nebraska.

There can be no question about the proposition that, if this real estate is not a part of the Nebraska domain, the district court for Washington county, Nebraska, was without jurisdiction to entertain this action in ejectment. *Fall v. Fall,* 75 Neb. 104, 120, 106 N. W. 412, 113 N. W. 175; *Rober v. Michelsen,* 82 Neb. 48, 116 N. W. 949; *Wimer v. Wimer,* 82 Va. 890, 5 S. E. 536; *Lindley v. O'Reilly,* 50 N. J. Law, 636, 15 Atl. 379; *Fall v. Eastin,* 215 U. S. 1, 30 S. Ct. 3.

In 1934 the appellee was the owner of a judgment obtained in Iowa against the appellant. In that year it instituted action on the judgment against the appellant by attachment of the real estate here involved in the district court for Washington county, Nebraska, claiming, of course, that the real estate was in Washington county, Nebraska. The real estate was sold to the appellee pursuant to the judgment on the attachment and sale thereof was confirmed on August 10, 1936. The appellant made no personal appearance in that action. It is this judgment and this sale which form the basis of the title and right of possession asserted by the appellee here.

To support his claim that this real estate is not a part

of the Nebraska domain the appellant asserts that before statehood it was either a part of the territory of Nebraska and that it was cut off by avulsion in 1856, or that certain lands in the same general location were obliterated and that thereafter these lands were builded onto the state of Iowa by accretion, but denies that any of the land ever was within or a part of the state of Nebraska.

The appellee states that these lands were cut off from the territory of Nebraska by avulsion, and asserts that the avulsion occurred in the years of 1856 and 1857 and before Nebraska statehood. In this connection it is the substantial contention of appellee that the land is beyond the western line of Iowa and, having been a part of the territory of Nebraska though having been cut off and separated from the territory by the main channel of the Missouri river before Nebraska statehood, which condition has remained substantially unchanged since, it is and has been always since statehood a part of the state.

We are not permitted to concern ourselves with the question of whether or not the land is in the state of Iowa, and not even with any decisions of the courts of that state declaring the location of the land with reference to its state line or of that of Nebraska. Obviously the courts of that state may declare it not to be a part of its domain, but they may make no binding determination with reference to the Nebraska domain. This is corollary to the proposition already mentioned that if the real estate in question is not a part of the Nebraska domain the district court for Washington county, Nebraska, was without jurisdiction to entertain the action and in consequence the decisions applicable there are applicable here.

In order that an understanding may be had of the problem presented here, it becomes necessary in brief to recite some of the history of the admission of Iowa and Nebraska into statehood.

The state of Iowa was admitted to the Union of states in the year 1846 pursuant to an enabling act of the national congress. By this act the western line of the state in the

vicinity of the land in question here was fixed at the middle of the channel of the Missouri river. The parties here do not question that at that time the land in issue here, if it was then subject to identification, was not within the Iowa boundaries. The appellee contends that the boundary has not substantially changed at all, while the appellant contends that it has changed only by the addition of lands including these by accretion to Iowa by imperceptible action of the river. It therefore follows that both parties place the center of the main channel of the Missouri river at the date of admission of Iowa to statehood to the east of this land, if it was subject to identification at that time. It becomes clear then that the parties are in accord on the proposition that, if this is identifiable land cut off by avulsion, it never was during any period in question a part of the domain of the state of Iowa.

The state of Nebraska was admitted into the Union of states on March 1, 1867, pursuant to an enabling act of congress passed April 19, 1864, 13 U. S. St. at Large, p. 47. The act geographically fixed the boundary of that part of the state bordering the Missouri river, which includes the boundary in question in this action, as follows: " * * * thence down the middle of the channel of said Missouri river, and following the meanderings thereof, to the place of beginning." It will be noted that it does not fix the eastern boundary of Nebraska as coincident with the western boundary of Iowa. This is the same description as is contained in the Constitution under which Nebraska came into the Union in 1867. Const. 1866, art. X, sec. 1. All of the conditions of the enabling act were accepted by the terms of the Constitution. Const. 1866, art. XI, sec. 6.

Accordingly then the middle of the channel of the Missouri river was, in 1864, the date of the enabling act, and in 1867, the date of Nebraska's admission to the Union, to the west of the land in question. Both agree that this land, if it existed as such, was not west of the middle of the channel of the Missouri river at any time after 1857.

Based upon this fact the appellant contends that under

the boundary description contained in the enabling act of congress, above referred to, and the 1866 Constitution of Nebraska (Cobbey's Ann. St. 1909, p. 69), this land never was a part of the state of Nebraska domain.

This contention of appellant is inescapable unless the congress contemplated in the enabling act of 1864 that the eastern boundary of Nebraska should not necessarily be the middle line of the Missouri river as it then existed. Did congress otherwise contemplate? The effect of appellee's contention is that it did.

There is nothing in the enabling act of congress, the Nebraska Constitution of 1866, the congressional act of February 9, 1867 (Cobbey's Ann. St. 1909, p. 53), admitting the state, to the Union, or the presidential proclamation of admission (Cobbey's Ann. St. 1909, p. 56), which makes any reference to any survey or any line except the middle of the channel of the Missouri river.

As authority for its position the appellee calls attention to the statements contained in the finding of the district court quoted in and apparently approved by the opinion in *Iowa Railroad Land Co. v. Coulthard*, 96 Neb. 607, 148 N. W. 328, in which case jurisdiction of land in the same general location as the land here was being considered, wherein it was stated: " * * * and the courts of Nebraska have jurisdiction of all lands within the United States survey of 1856 without regard to the enabling act by which Nebraska was admitted into the Union, except such lands, if any, as may have accreted to the Iowa bank before the said avulsion occurred;" and those contained in *Miller v. McLaughlin*, 118 Neb. 174, 224 N. W. 18: "The eastern boundary of Nebraska is the 'middle of the channel' of the Missouri river. * * * The western boundary of Iowa east of Nebraska is the same;" also those contained in *Miller v. McLaughlin*, 281 U. S. 261, 50 S. Ct. 296: "The middle of the channel of the Missouri river is the boundary line between the states of Nebraska and Iowa."

In the cases of *Miller v. McLaughlin, supra*, the police power and in consequence the jurisdiction of the states of

Iowa and Nebraska over the Missouri river as a common boundary were the only matters for consideration, and without consideration of exceptional circumstances such as are presented here the general assumption was indulged that the boundaries of the two states coincided at the middle of the channel of the river.

The case of *Iowa Railroad Land Co. v. Coulthard, supra,* is in point, but it is rested on a stated United States survey of 1856. We think the conclusion is correct, but that the limiting of the basis therefor is erroneous. No reason is found in the authorities for grounding the jurisdiction of the courts of the state of Nebraska on the named or any other government survey.

The true reason for the jurisdiction of the courts of Nebraska over this land, if it is land cut off from the mainland by avulsion, is made clear by the opinion in *Missouri v. Kentucky,* 11 Wall. 395, 20 L. Ed. 116. This was an action by the state of Missouri against the state of Kentucky for decree declaring that Wolf Island, an island in the Mississippi river between Missouri and Kentucky, was a part of the domain of the state of Missouri, and cross-action by the state of Kentucky.

Kentucky was admitted into the Union as a state on June 1, 1792. Missouri was admitted in 1820. As pointed out in the opinion in *Missouri v. Kentucky, supra,* the territory which became the state of Kentucky was a part of "the ancient right and possession of Virginia," and by the treaty of 1763 the boundary was the middle of the bed of the Mississippi river. As is also pointed out, Kentucky succeeded to this right and possession in 1792. As is further pointed ed out, this line was recognized by the treaty of this country with Great Britain in 1783.

Having all of these dates and incidents in mind the court said in the opinion: "It follows, therefore, that if Wolf Island, in 1763, or in 1820, or at any intermediate period between these dates, was east of this line, the jurisdiction of Kentucky rightfully attached to it. If the river has subsequently turned its course, and now runs east of the is-

land, the status of the parties to this controversy is not altered by it, for the channel which the river abandoned remains, as before, the boundary between the States and the island does not, in consequence of this action of the water, change its owner."

It appears then, assuming that the land in question here was cut off from the territory of Nebraska by avulsion, that the following paraphrase of the language quoted from *Missouri v. Kentucky, supra,* should be controlling here: It follows, therefore, that if the lands in question here, from the date of acquisition of this territory by the Louisiana purchase in 1803, to 1846, the date when the state of Iowa was admitted to the Union, were west of the middle line of the Missouri river, the jurisdiction of Nebraska rightfully attached to it. If the river has subsequently turned its course and now runs west of the lands, the status of the parties to this controversy is not altered by it, for the channel which the river abandoned remains, as before, the boundary between the states, and the lands do not in consequence of this action of the water change their owner.

On this authority it is the opinion of this court that it was the intention of the congress of the United States in the formation of the state of Nebraska out of the territory obtained through the Louisiana purchase that the eastern boundary adjacent to the state of Iowa should be coincident and coterminus with the middle of the channel of the Missouri river as it existed at the date of purchase of the territory, except to the extent that it was abridged, if it was abridged, by any rights acquired by the state of Iowa through the enabling act whereby that state was admitted into the Union.

The appellant cites, among others, the cases of *George v. Pierce County,* 111 Wash. 495, 191 Pac. 406; *Moss v. Gibbs,* 10 Heisk. (Tenn.) 283; *Laxon v. State,* 126 Tenn. 302, 148 S. W. 1059, in support of his contention. It is quite true that they do so very specifically, but they cannot justify this court in an attempt to override the declaration

of the United States supreme court, the final authoritative tribunal in determination of disputed boundaries between the states.

We conclude, therefore, that if it shall be shown that these lands were cut off from the territory of Nebraska in 1856 or 1857, the district court for Washington county, Nebraska, had jurisdiction of the subject-matter of this action. We conclude further that if there was an issue as to whether or not these lands were within the state of Nebraska the court had jurisdiction to try that issue.

By its petition the plaintiff put in issue the location of the land by its description and declaration that it was in Washington county, Nebraska. From an examination of the bill of exceptions we conclude that the evidence of plaintiff was sufficient for submission of that issue to a jury and to sustain a verdict in favor of plaintiff.

In denial of the contention of the plaintiff on this issue the defendant adduced evidence that the lands in question cannot be identified as lands cut off from Nebraska by avulsion. The substance of his contention is that there was an avulsion in 1856, but that those lands were obliterated by the action of the river, and that these lands were added to the Iowa side from the bed of the river or by accretion.

On the basis of this evidence he contends that it was error for the court to discharge the jury and render judgment in favor of the plaintiff. In support of his position he invokes the rule that in reviewing a directed verdict, or the discharge of a jury and rendition of a judgment, this court will consider as conclusively established every fact which the evidence proves, or tends to establish the contention of the party against whom the verdict was directed or the judgment rendered, and if from the entire evidence thus construed different minds might reasonably draw different conclusions it will be deemed error on the part of the trial court to have directed a verdict or rendered such judgment. *Central Nat. Bank v. Ericson,* 92 Neb. 396, 138 N. W. 563; *Littlejohn v. Fink,* 109 Neb. 282, 190 N. W. 1020; *Petersen v. Ohio Casualty Ins. Co.,* 131 Neb. 128, 267 N. W. 393.

From an examination of the evidence without setting it forth at large or in substance, and in the light of the authority of this rule, we are convinced that the trial court erred in refusing to submit this controverted issue to the jury.

The appellant complains that the evidence. of title and right of possession in the plaintiff was insufficient, assuming that the lands are in Nebraska, to sustain an action in ejectment. While we are not obliged to determine the question at this time it is presented, and we deem it proper to respond to the contention of appellant here in order that misunderstanding may be avoided on another trial of this case.

In an ejectment action the plaintiff must plead his legal title and present right of possession. *Omaha Real Estate & Trust Co. v. Reiter*, 47 Neb. 592, 66 N. W. 658; *Wells v. Steckelberg*, 52 Neb. 597, 72 N. W. 865; *Comstock v. Kerwin*, 57 Neb. 1, 77 N. W. 387; *Runkle v. Welty*, 78 Neb. 571, 574, 111 N. W. 463, 113 N. W. 160.

In such action where the defendant is in possession of the disputed lands under claim of ownership plaintiff must recover on the superiority of his title, and, if he relies on a record or paper title, he must show a regular chain of title from the government, or from some grantor in possession, or from a common source from which each of the litigants claims. *Runkle v. Welty, supra.*

The defendant here was in possession and the plaintiff did not show a regular chain of title from the government, nor did it show title from a grantor in possession. It did, however, show record title coming from the defendant in possession by virtue of the judgment in the attachment proceeding hereinbefore referred to. The one as effectively divests title as the other, and no reason suggests itself why a plaintiff should be required to go back beyond the deed which divests the defendant of title and vests that same title in the plaintiff.

The plaintiff here claimed title through the defendant, and in this action it is the holding that it is not required

to go back farther than the defendant in proving its title. See *Byers v. Rodabaugh*, 17 Ia. 53.

The appellant urges that a judgment in ejectment cannot be sustained in this action for the reason that from the description set forth and sought to be proved the location of the land in dispute cannot be located. With this contention we are unable to agree.

The rule in this state, as laid down in the first paragraph of the syllabus of *Lane v. Abbott*, 23 Neb. 489, 37 N. W. 82, is that, "In order that a plaintiff may recover real estate in an action of ejectment, his description of the land in dispute must be such as would enable a competent surveyor to locate it by referring to deeds, writings or known objects by which the exact land can be identified."

Certainly, within this rule a competent surveyor, by reference to and extension of section, township and range lines of well-known and recognized surveys in the state of Nebraska, would be able to locate the exact land in dispute herein.

Errors with regard to cross-examination and the admission of evidence are assigned and discussed, but since they probably will not recur on a retrial they will not be considered.

The judgment of the district court is reversed and the cause remanded for a new trial.

REVERSED.

The following opinion on motion for rehearing was filed April 9, 1943.

YEAGER, J.

This action comes here at this time on motion for clarification of the opinion and for rehearing and it appears from further study that there is a more conclusive reason for a determination of the true location of the land in question. assuming that it is avulsion resulting from the action of the

Missouri river in 1856 or 1857, than those stated in the original opinion. Therefore, though the ultimate determination is the same, it seems advisable that a new opinion should be prepared. Since the changes are such that they could not well be assimilated into the original without confusion, it seems that an entire opinion should be substituted for the one adopted. The original opinion appears as *First Nat. Bank v. McFerrin, ante,* p. 617, 7 N. W. (2d) 173.

This is an action in ejectment by the First National Bank of Missouri Valley, Iowa, a corporation, plaintiff and appellee, against Elvin E. McFerrin and others, defendants, which was tried to a jury in the district court for Washington county, Nebraska. At the conclusion of the evidence the plaintiff moved the court to discharge the jury and render judgment in favor of plaintiff and against the defendants in accordance with the prayer of the petition, which motion was sustained and judgment was accordingly entered. From this judgment Elvin E. McFerrin is the only appellant.

The land involved in this action is on the east or Iowa side of the Missouri river, and is described in the petition as follows: Tax lot number seven (7), the west half of the southwest quarter (W½SW¼) and the southeast quarter of the southwest quarter (SE¼SW¼), all in section twenty (20) ; the east half of the southeast quarter (E½SE¼) and the southeast quarter of the northeast quarter (SE¼ NE¼), all in section nineteen (19) ; all in township nineteen (19) north, range twelve (12), east of the sixth P. M., in Washington county, Nebraska.

The petition declares that the fee simple title to the lands is in the plaintiff, that the defendant Elvin E. McFerrin is in possession, and that plaintiff is entitled to immediate possession.

The answer on which the case was tried contains a general denial, a denial of plaintiff's title and right of possession and an allegation that the court was without jurisdiction over the subject-matter.

Numerous errors have been assigned as grounds for re-

versal, but only a few of them require consideration, and these will be discussed in the order of their relative importance. The assignment of first importance is that the court erred in entertaining jurisdiction of the subject-matter of the action, for the reason that appellant contends that the real estate involved here is not within the boundaries of the state of Nebraska.

There can be no question about the proposition that, if this real estate is not a part of the Nebraska domain, the district court for Washington county, Nebraska, was without jurisdiction to entertain this action in ejectment. *Fall v. Fall*, 75 Neb. 104, 120, 106 N. W. 412, 113 N. W. 175; *Rober v. Michelsen*, 82 Neb. 48, 116 N. W. 949; *Wimer v. Wimer*, 82 Va. 890, 5 S. E. 536; *Lindley v. O'Reilly*, 50 N. J. Law, 636, 15 Atl. 379; *Fall v. Eastin*, 215 U. S. 1, 30 S. Ct. 3.

In 1934 the appellee was the owner of a judgment obtained in Iowa against the appellant. In that year it instituted action on the judgment against the appellant by attachment of the real estate here involved in the district court for Washington county, Nebraska, claiming, of course, that the real estate was in Washington county, Nebraska. The real estate was sold to the appellee pursuant to the judgment on the attachment and sale thereof was confirmed on August 10, 1936. The appellant made no personal appearance in that action. It is this judgment and this sale which form the basis of the title and right of possession asserted by the appellee here.

To support his claim that this real estate is not a part of the Nebraska domain the appellant asserts that before statehood it was either a part of the territory of Nebraska and that it was cut off by avulsion in 1856, or that certain lands in the same general location were obliterated and that thereafter these lands were builded onto the state of Iowa by accretion, but denies that any of the land ever was within or a part of the state of Nebraska.

The appellee states that these lands were cut off from the territory of Nebraska by avulsion, and asserts that the avulsion occurred in the years of 1856 and 1857 and before Ne-

braska statehood. In this connection it is the substantial contention of appellee that the land is beyond the western line of Iowa and, having been a part of the territory of Nebraska though having been cut off and separated from the territory by the main channel of the Missouri river before Nebraska statehood, which condition has remained substantially unchanged since, it is and has been always since statehood a part of the state.

We are not permitted to concern ourselves with the question of whether or not the land is in the state of Iowa, and not even with any decisions of the courts of that state declaring the location of the land with reference to its state line or of that of Nebraska. Obviously the courts of that state may declare it not to be a part of its domain, but they may make no binding determination with reference to the Nebraska domain. This is corollary to the proposition already mentioned that if the real estate in question is not a part of the Nebraska domain the district court for Washington county, Nebraska, was without jurisdiction to entertain the action and in consequence the decisions applicable there are applicable here.

In order that an understanding may be had of the problem presented here, it becomes necessary in brief to recite some of the history of the admission of Iowa and Nebraska into statehood.

The state of Iowa was admitted to the Union of states in the year 1846 pursuant to an enabling act of the national congress. By this act the western line of the state in the vicinity of the land in question here was fixed at the middle of the channel of the Missouri river. The parties here do not question that at that time the land in issue here, if it was then subject to identification, was not within the Iowa boundaries. The appellee contends that the boundary has not substantially changed at all, while the appellant contends that it has changed only by the addition of lands including these by accretion to Iowa by imperceptible action of the river. It therefore follows that both parties place the center of the main channel of the Missouri river at the date of

admission of Iowa to statehood to the east of this land, if it was subject to identification at that time. It becomes clear then that the parties are in accord on the proposition that, if this is identifiable land cut off by avulsion, it never was during any period in question a part of the domain of the state of Iowa.

The state of Nebraska was admitted into the Union of states on March 1, 1867, pursuant to an enabling act of congress passed April 19, 1864, 13 U. S. St. at Large, p. 47. The act geographically fixed the boundary of that part of the state bordering the Missouri river, which includes the boundary in question in this action, as follows: " * * * thence down the middle of the channel of said Missouri river, and following the meanderings thereof, to the place of beginning." It will be noted that it does not fix the eastern boundary of Nebraska as coincident with the western boundary of Iowa. This is the same description as is contained in the Constitution under which Nebraska came into the Union in 1867. Const. 1866, art. X, sec. 1. All of the conditions of the enabling act were accepted by the terms of the Constitution. Const. 1866, art. XI, sec. 6.

Accordingly then the middle of the channel of the Missouri river was, in 1864, the date of the enabling act, and in 1867, the date of Nebraska's admission to the Union, to the west of the land in question. Both agree that this land, if it existed as such, was not west of the middle of the channel of the Missouri river at any time after 1857.

Based upon this fact the appellant contends that under the boundary description contained in the enabling act of congress, above referred to, and the 1866 Constitution of Nebraska (Cobbey's Ann. St. 1909, p. 69), this land never was a part of the state of Nebraska domain.

This contention of appellant is inescapable unless the congress contemplated in the enabling act of 1864, that the eastern boundary of Nebraska should not necessarily be the middle line of the Missouri river as it then existed. Did congress otherwise contemplate? The effect of appellee's contention is that it did.

There is nothing in the enabling act of congress, the Nebraska Constitution of 1866, the congressional act of February 9, 1867 (Cobbey's Ann. St. 1909, p. 53), admitting the state to the Union, or the presidential proclamation of admission (Cobbey's Ann. St. 1909, p. 56), which makes any reference to any survey or any line except the middle of the channel of the Missouri river.

As authority for its position the appellee calls attention to the statements contained in the finding of the district court quoted in and apparently approved by the opinion in *Iowa Railroad Land Co. v. Coulthard*, 96 Neb. 607, 148 N. W. 328, in which case jurisdiction of land in the same general location as the land here was being considered, wherein it was stated: " * * * and the courts of Nebraska have jurisdiction of all lands within the United States survey of 1856 without regard to the enabling act by which Nebraska was admitted into the Union, except such lands, if any, as may have accreted to the Iowa bank before the said avulsion occurred;" and those contained in *Miller v. McLaughlin*, 118 Neb. 174, 224 N. W. 18: "The eastern boundary of Nebraska is the 'middle of the channel' of the Missouri river. * * * The western boundary of Iowa east of Nebraska is the same;" also those contained in *Miller v. McLaughlin*, 281 U. S. 261, 50 S. Ct. 296: "The middle of the channel of the Missouri river is the boundary line between the states of Nebraska and Iowa."

In the cases of *Miller v. McLaughlin, supra,* the police power and in consequence the jurisdiction of the states of Iowa and Nebraska over the Missouri river as a common boundary were the only matters for consideration, and without consideration of exceptional circumstances such as are presented here the general assumption was indulged that the boundaries of the two states coincided at the middle of the channel of the river.

The case of *Iowa Railroad Land Co. v. Coulthard, supra,* is in point, but it is rested on a stated United States survey of 1856. We think the conclusion is correct, but that the limiting of the basis therefor is erroneous. No reason is

found in the authorities for grounding the jurisdiction of the courts of the state of Nebraska on the named or any other government survey.

The true reason for the jurisdiction of the courts of Nebraska over this land, if it is land cut off from the mainland by avulsion, is pointed to by the opinion in *Missouri v. Kentucky*, 11 Wall. 395, 20 L. Ed. 116. This was an action by the state of Missouri against the state of Kentucky for decree declaring that Wolf Island, an island in the Mississippi river between Missouri and Kentucky, was a part of the domain of the state of Missouri, and cross-action by the state of Kentucky.

Kentucky was admitted into the Union as a state on June 1, 1792. Missouri was admitted in 1820. As pointed out in the opinion in *Missouri v. Kentucky, supra,* the territory which became the state of Kentucky was a part of "the ancient right and possession of Virginia," and by the treaty of 1763 the boundary was the middle of the bed of the Mississippi river. As is also pointed out, Kentucky succeeded to this right and possession in 1792. As is further pointed out. this line was recognized by the treaty of this country with Great Britain in 1783.

Having all these dates and incidents in mind the court said in the opinion: "It follows, therefore, that if Wolf Island, in 1763, or in 1820, or at any intermediate period between these dates, was east of this line, the jurisdiction of Kentucky rightfully attached to it. If the river has subsequently turned its course, and now runs east of the island, the status of the parties to this controversy is not altered by it, for the channel which the river abandoned remains, as before, the boundary between the States and the island does not, in consequence of this action of the water, change its owner."

The effect of this is that if Wolf Island was a part of the Kentucky domain during its status either as a territory or a state it could never have become a part of Missouri. This is important in that the court evidenced a purpose to hold that lands on one side of a navigable stream shall be, be-

come and remain a part of the adjacent area, whether it be state or territory, and that it shall never become a part of a state on the other side where the main channel of the stream is fixed as its boundary.

Applying that intention to the case at bar it will be observed that prior to 1846 the areas on both sides of the Missouri river in question were territorial lands of the United States government. It requires no citation of authority to state that the congress had the power to divide this territory into territorial divisions, states, or territories and states. In 1846 the congress constituted the state of Iowa and fixed its western boundary as the then main channel of the Missouri river.

Reasoning from the deduction we have thus made from *Missouri v. Kentucky, supra,* from this division and the establishment of the Iowa line, all that was on the western side of the line remained, or became a part of the Nebraska territory.

From this date to 1854 it will be admitted that the line was only a line bordering a large unorganized territory to the west and that the congress could have established any line in division of territory it chose. It never made a division prior to 1854.

In 1854 the congress approved an act organizing the territory to the west into the territory of Nebraska. 10 U. S. St. at Large, ch. 59, p. 277; Cobbey's Ann. St. 1909, p. 40. Section one of the act is as follows: "Be it Enacted by the Senate and House of Reperesentatives of the United States of America in Congress Assembled, That all that part of the Territory of the United States included within the following limits, except such portions thereof as are hereinafter expressly exempted from the operations of this act, to-wit: beginning at a point in the Missouri river, where the fortieth parallel of north latitude crosses the same; thence west on said parallel to the east boundary of the Territory of Utah, on the summit of the Rocky Mountains; thence on said summit northward to the forty-ninth parallel of north latitude; thence east on said parallel to the

western boundary of the Territory of Minnesota; thence southward on said boundary to the Missouri river; thence down the main channel of said river to the place of beginning, be, and, the same is, hereby created into a temporary government, by the name of the Territory of Nebraska: and when admitted as a State or States, the said Territory, or any portion of the same, shall be received into the Union with or without slavery, as their Constitution may prescribe at the time of their admission."

It will be noted that in this act the congress used the same designation for the eastern boundary of this organized territory as it used for the western boundary of Iowa.

The reasonable inference to be drawn from this is that congress contemplated that all of the unorganized territory to the west was a part of the Nebraska territory and intended that it should be and become a part of the organized territory of Nebraska.

It is the opinion of this court that it was the intention of the congress of the United States in the formation of the organized territory of Nebraska out of the territory west of the Missouri river and the formation of the state of Nebraska out of the territory of Nebraska that the eastern boundary adjacent to the state of Iowa should be coincident and coterminus with the middle of the channel of the Missouri river as it existed at the time Iowa was admitted into the Union.

The appellant cites, among others, the cases of *George v. Pierce County,* 111 Wash. 495, 191 Pac. 406; *Moss v. Gibbs,* 10 Heisk. (Tenn.) 283; *Laxon v. State,* 126 Tenn. 302, 148 S. W. 1059, in support of his contention. It is quite true that they do so very specifically, but they cannot justify this court in an attempt to override what we consider a reasonable inference to be drawn from other decisions and the evident purpose and intent inferable from the acts of congress herein referred to.

Even assuming the incorrectness of our position that the line between the states of Iowa and Nebraska must be considered as having been established as of the date of the ad-

mission of Iowa to the Union, still on another ground it is necessary to hold for the purposes of this action, if this was land removed from the western side of the river by avulsion in 1856 or 1857, that it belonged to the state of Nebraska. As has been pointed out in the quotation from section one of the organic act of the territory of Nebraska, the eastern boundary of the organized territory was by congress declared to be east of the lands in question. Also as pointed out, this declaration was made at least two years before the claimed avulsion occurred. Nothing has transpired since 1854 to alter the attachment of these lands.

· This provision prescribed the eastern boundary of the territory at that time and the implication is clear that it was also to become the boundary of a contemplated state unless expressly exempted by congress from the operation of the act in this respect. ·It was never expressly exempted. As has already been noted the Nebraska enabling act and the Nebraska Constitution use the same description of the boundary.

From this it is clear that the congress, by the organic act, at least from the date of approval of this act, intended that all lands west of the main channel of the Missouri river in 1854 should be a part of the organized territory of Nebraska. If this land was cut off by avulsion, the avulsion did not take place until the years 1856 and 1857, hence it never did and never could have become a part of Iowa by avulsion from the opposite side of the river.

We conclude that, there having been no specific expression of a contrary intention or exemption, the congress in the enabling act for statehood intended the boundary to be the same as that fixed in the organic act. It follows then that if this land was cut off from the territory of Nebraska in 1856 or 1857 it still belongs to Nebraska and the district court of Washington county, Nebraska, had jurisdiction over the subject-matter of the action. We conclude further that if there was an issue as to whether or not these lands were within the state of Nebraska, the court had jurisdiction to try that issue.

By its petition the plaintiff put in issue the location of the land by its description and declaration that it was in Washington county, Nebraska. From an examination of the bill of exceptions we conclude that the evidence of plaintiff was sufficient for submission of that issue to a jury and to sustain a verdict in favor of plaintiff.

In denial of the contention of the plaintiff on this issue the defendant adduced evidence that the lands in question cannot be identified as lands cut off from Nebraska by avulsion. The substance of his contention is that there was an avulsion in 1856, but that those lands were obliterated by the action of the river, and that these lands were added to the Iowa side from the bed of the river or by accretion.

On the basis of this evidence the defendant contends that it was error for the court to discharge the jury and render judgment in favor of the plaintiff. In support of his position he invokes the rule that in reviewing a directed verdict, or the discharge of a jury and rendition of a judgment, this court will consider as conclusively established every fact which the evidence proves, or tends to establish the contention of the party against whom the verdict was directed or the judgment rendered, and if from the entire evidence thus construed different minds might reasonably draw different conclusions it will be deemed error on the part of the trial court to have directed a verdict or rendered such judgment. *Central Nat. Bank v. Ericson,* 92 Neb. 396, 138 N. W. 563; *Littlejohn v. Fink,* 109 Neb. 282, 190 N. W. 1020; *Petersen v. Ohio Casualty Ins. Co.,* 131 Neb. 128, 267 N. W. 393.

From an examination of the evidence without setting it forth at large or in substance, and in the light of the authority of this rule, we are convinced that the trial court erred in refusing to submit this controverted issue to the jury.

The appellant complains that the evidence of title and right of possession in the plaintiff was insufficient, assuming that the lands are in Nebraska, to sustain an action in ejectment. While we are not obliged to determine the ques-

tion at the time, it is presented, and we deem it proper to respond to the contention of appellant here in order that misunderstanding may be avoided on another trial of this case.

In an ejectment action the plaintiff must plead his legal title and present right of possession. *Omaha Real Estate & Trust Co. v. Reiter,* 47 Neb. 592, 66 N. W. 658; *Wells v. Steckelberg,* 52 Neb. 597, 72 N. W. 865; *Comstock v. Kerwin,* 57 Neb. 1, 77 N. W. 387; *Runkle v. Welty,* 78 Neb. 571, 574, 111 N. W. 463, 113 N. W. 160.

In an action where the defendant is in possession of the disputed lands under claim of ownership plaintiff must recover on the superiority of his title, and, if he relies on a record or paper title, he must show a regular chain of title from the government, or from some grantor in possession, or from a common source from which each of the litigants claims. *Runkle v. Welty, supra.*

The defendant here was in possession and the plaintiff did not show a regular chain of title from the government, nor did it show title from a grantor in possession. It did, however, show record title coming from the defendant in possession by virtue of the judgment in the attachment proceeding hereinbefore referred to. The one as effectively divests title as the other, and no reason suggests itself why a plaintiff should be required to go back beyond the deed which divests the defendant of title and vests that same title in the plaintiff.

The plaintiff here claimed title through the defendant, and in this action it is the holding that it is not required to go back farther than the defendant in proving his title. See *Byers v. Rodabaugh,* 17 Ia. 53.

The appellant urges that a judgment in ejectment cannot be sustained in this action for the reason that from the description set forth and sought to be proved the land in dispute cannot be located. With this contention we are unable to agree.

The rule in this state, as laid down in the first paragraph of the syllabus of *Lane v. Abbott,* 23 Neb. 489, 37 N. W. 82, is that, "In order that a plaintiff may recover real estate in

an action of ejectment, his description of the land in dispute must be such as would enable a competent surveyor to locate it by referring to deeds, writings, or known objects by which the exact land can be identified."

Certainly, within this rule a competent surveyor, by reference to and extension of section, township and range lines of well known and recognized surveys in the state of Nebraska, would be able to locate the exact land in dispute herein.

Errors with regard to cross-examination and the admission of evidence are assigned and discussed, but since they probably will not recur on a retrial they will not be considered.

The judgment of the district court is reversed and the cause remanded for a new trial.

REVERSED.

Rose and Eberly, JJ., not participating.

PAINE, J., dissenting.

This tract of land has been the subject of much litigation in the courts, the contention of one side in all these suits being that, since the land was on the east side of the Missouri river, it was in the state of Iowa. It is a tract of some 1,200 acres in a larger tract of over 1,600 acres now lying east of the Missouri river, which flows north to south along the west side of this larger tract of land.

Plaintiff bank produces maps and proof to show that the tract is located in sections 19 and 20, township 19 north, range 12 east, in Washington county, Nebraska. Defendant McFerrin, on the other hand, shows that the land is in sections 32 and 33, township 79 north, range 45 west of the 5th P. M. in Harrison county, Iowa.

Iowa was admitted as a state in 1846, and that enabling act defined the western boundary of Iowa as the middle of the channel of the Missouri river. The enabling act admitting Nebraska was approved by congress on April 19, 1864, but congress did not pass the act to carry into effect the admission of the state until February 9, 1867, and there was

a little further delay, as Andrew Johnson, the President, did not issue the proclamation of admission until March 1, 1867.

The tract of land in question, as shown by the government survey made in Iowa in 1852 and the government survey made of Nebraska in 1856, was in what is now Washington county, Nebraska. It has been determined several times by courts of last resort that probably in the early spring of 1857 there was a great avulsion, by which the river cut across, forming a new channel and placing this land on the east side of the middle of the channel of the Missouri river, where it has remained at all times since the spring of 1857.

If, as stated in Clark, Surveying and Boundaries (2d ed.) 510, boundaries between states are generally fixed by the enabling act of congress, how could an avulsion of 1857, or any of many avulsions occurring before that date, affect the easterly boundary of Nebraska, which was fixed, *i. e.*, *frozen*, exactly as it was in April, 1864, by the enabling act of congress?

If the land in question was east of the channel of the Missouri river. when the jurisdiction of the state of Nebraska attached when the enabling act fixed the boundaries, by what act of the United States or of Nebraska was it transferred across the river to Nebraska?

Can this court say that, when congress in the enabling act said that the lower part of the eastern boundary of the state of Nebraska should be "thence down the middle of the channel of said Missouri river, and following the meanderings thereof, to the place of beginning," congress really intended thereby to have an exception read into the eastern boundary of Nebraska as follows: "Save and except a certain tract of land taken away from Nebraska Territory by avulsion back in the year 1857 and now lying east of the middle of the channel but which shall also be included in the state of Nebraska?"

For my part, it strikes me that congress meant just what it said on the date it passed the act, and this court has no right to interpolate new boundaries in that act.

In *Miller v. McLaughlin,* 281 U. S. 261, 50 S. Ct. 296, Seymour L. Smith and C. A. Sorensen, as attorney general, argued a case to the United States supreme court involving concurrent fishing rights in the Missouri river, and Justice Brandeis began his opinion (April 14, 1930) with these words: "The middle of the channel of the Missouri river is the boundary line between the states of Nebraska and Iowa." Judge Rose, in an opinion under the same title, found in 118 Neb. 174, 224 N. W. 18, said: "The eastern boundary of Nebraska is the middle of the channel of the Missouri river." See, also, *Iowa v. Illinois,* 147 U. S. 1, 13 S. Ct. 239.

In the case of *Missouri v. Kentucky,* 11 Wall. 395, 20 L. Ed. 116, decided in 1870, the litigation concerned Wolf Island, a large island lying perhaps a little closer to the Kentucky side of the river. It appears to be the holding that, if Wolf Island, in 1763, or in 1820, the latter being the date of the admission of the state of Missouri, was on either of said dates, or at any intermediate period between these dates, east of the middle of the Mississippi river, then the jurisdiction of Kentucky rightfully attached to it. If the river later changed its course, and now runs east of the island, this does not change its ownership to the state of Missouri.

Defendant insists that, to paraphrase this holding and apply it to the case at bar, it would read: "It follows, therefore, that if the land in question in 1846 or 1867, or at any intermediate period between these dates was east of this line (the middle of the channel of the Missouri river), the jurisdiction of Iowa rightfully attached to it."

In this Wolf Island case, the United States supreme court makes no distinction at all between gradual or sudden changes, but the jurisdiction appears to be fixed at the time the boundary of the state is fixed by congress.

The long and expensive litigation over the question whether this land, which has physically been a part of Iowa since the early spring of 1857, may not in some way be brought under the jurisdiction of Nebraska courts, appears to make the following quotation quite applicable:

"In case of doubt, every territory terminating on a river is presumed to have no other boundary than the river itself, because nothing is more natural than to take a river for a boundary, when a settlement is made; and wherever there is a doubt, that is always to be presumed which is most natural and most probable." *Nebraska v. Iowa,* 143 U. S. 359, 12 S. Ct. 396.

In paragraph 2 of the syllabus in the case at bar, it is stated: "Lands cut off from the mainland of a state by avulsion do not change their status but remain a part of the state from which they were cut off."

I think these words should be added,—unless they were cut off from the territory, which afterwards became a state, prior to the time the boundaries of the state were fixed by congress.

To invalidate the boundaries of a state, as fixed by congress, by opening the door to an investigation of each and every one of innumerable avulsions occurring along the Missouri or Mississippi rivers in times past would be a dangerous precedent to set.

I dissent from the opinion adopted by four members of this court because I believe that the jurisdiction of the courts of Nebraska does not extend over land which was outside of the state of Nebraska when its original boundary lines were fixed by congress and has always remained outside thereof.